**MONOLITH PORTLAND MIDWEST CO. v. RECONSTRUCTION FINANCE CORPORATION.**

No. 12200.

United States Court of Appeals Ninth Circuit.

Dec. 21, 1949.

Edward R. Young, Alfred L. Black, Jr., Joseph T. Enright and Donald J. Dunne, Los Angeles, Cal., for appellant.

Allan E. Charles, John F. Porter, San Francisco, Cal., R. C. Goodale, Washington, D. C., Lillick, Geary & McHose, Benjamin & Lieberman, Los Angeles, Cal., for appellee.

Before HEALY and GOODRICH[1], Circuit Judges, and GOODMAN, District Judge.

GOODMAN, District Judge.

Whether a contractor may maintain a court action against the United States for damages because of the termination by the United States of a war contract pursuant to the War Mobilization and Reconversion Act of 1944, 58 Stat. 785, 50 U.S.C.A. Appendix, § 1651 et seq., or whether relief ab initio can only be sought administratively under the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., 58 Stat. 649, is the main question presented in this appeal.

The contract in suit was made on June 28, 1943 between appellant, a cement company, and Defense Plant Corporation, a

1. Third Circuit, sitting by designation.

subsidiary of respondent Reconstruction Finance Corporation. The motivation for the contract was the mutual desire of appellant and the United States Government to determine the feasibility of commercially extracting alumina from our native anorthosite ores by a method developed by appellant. Defense Plant Corporation undertook to furnish the money necessary to construct and operate a test plant. Appellant agreed to supervise the construction of the plant and to license to Defense Plant Corporation the use of its process. The contract provided that appellant should operate the plant for Defense Plant Corporation for ten years subject to the right of either party to cancel the operating agreement upon thirty days notice, at any time after 60 days after completion of the plant. Defense Plant Corporation agreed that, should it decide to dispose of the plant during the continuance of the operating agreement or within six months of its termination, appellant would have the first option to purchase.

In 1945, the Reconstruction Finance Corporation dissolved Defense Plant Corporation and succeeded to its rights and liabilities under the contract. On September 10, 1946, when the plant was nearing completion, the Reconstruction Finance Corporation terminated the contract upon an order issued pursuant to the War Mobilization and Reconversion Act of 1944, 58 Stat. 785, 50 U.S.C.A.Appendix, §§ 1651–1678, by the Director of War Mobilization and Reconversion. Less than two months thereafter appellant commenced this proceeding, in the State Court, from whence it was removed to the United States District Court for the Southern District of California. Appellant prayed for relief in the alternative: either possession of the plant, plus $516,000 to complete it, and $1,-200,000 to make a test run, or $7,500,000

with which to build and operate another plant; and for reimbursement for expenses incurred before the termination of the contract, to-wit, $197,524.76 together with interest.

The District Court concluded that the Director's order was within his authority under Section 202 of the War Mobilization and Reconversion Act.[2] It found that provision for fair compensation upon such termination is accorded by the Contract Settlement Act of 1944, 58 Stat. 649, 41 U.S.C.A. §§ 101–125, and that appellant had not exhausted the administrative remedy prescribed by that Act. It thereupon dismissed the cause. This appeal is from the judgment of dismissal.

The main grounds urged on appeal are threefold:

1. The Reconversion and Settlement Acts do not apply to the contract in suit.

2. Assuming their application, the Settlement Act provides only an optional, not a mandatory remedy.

3. In any event, appellant complied with the Settlement Act, but got no administrative relief and hence is entitled to judicial relief.

■ The Contract Settlement Act took effect on July 21, 1944, and the War Mobilization and Reconversion Act a few months thereafter on October 3, 1944. Appellant contends that the Acts were not intended to apply to contracts executed prior to their passage. Both Acts were designed to promote the orderly termination and settlement of war contracts. Each was an essential element of a unitary remedy. The Reconversion Act incorporated the Office of Contract Settlement, established by the Settlement Act, into the Office of War Mobilization and Reconversion. The Settlement Act, Sec. 3(a), expressly applies to contracts previously made. We find no

---

**2.** Section 202. "Any contracting agency shall terminate prime contracts for war production whenever in the opinion of the agency the performance under such contracts will not be needed for the prosecution of the war, and shall not continue performance under such contracts merely for the purpose of providing business and employment, or for any purposes other than the prosecution of the war, unless the Office of War Mobilization and Reconversion finds that the continuation of some or all of the work in process under any such contract will benefit the Government or is necessary to avoid substantial physical injury to a plant or property."

merit in the claim that the Reconversion Act is not likewise applicable.

To appellant's argument that the Acts cannot constitutionally apply to prior contracts, it should be sufficient to reply that the judicial determination even of constitutional issues ordinarily must await the exhaustion of prescribed administrative remedies. Aircraft & Diesel Equipment Corp. v. Hirsch, 1947, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. But considering its merits, we find the point to be unsubstantial. It has long been settled that the United States may terminate and settle war contracts without answering in Court for damages. This is so even though there is no termination provision in the contract, and even though the terminating statute is applied retroactively. De Laval Steam Turbine Co. v. United States, 1931, 284 U.S. 61, 52 S.Ct. 78, 76 L.Ed. 168; Gromfine and Edwards, "Termination after World War I," 10 Law and Contemporary Problems 563, 567–571 (1944). It is true, as appellant points out, that the mere fact that the Reconstruction Finance Corporation is a government agency does not extend to it all the powers and immunities of the sovereign. Reconstruction Finance Corporation v. J. G. Menihan Corp., 1941, 312 U.S. 81, 83, 61 S.Ct. 485, 85 L.Ed. 595. But, it is also true that the Congress could endow Reconstruction Finance Corporation with such governmental powers and immunities as it saw fit. Keifer & Keifer v. Reconstruction Finance Corporation, 1939, 306 U.S. 381, 389, 59 S.Ct. 516, 83 L.Ed. 784. The short answer is that at the time Reconstruction Finance Corporation succeeded to the rights and liabilities under this contract and at the time the contract was terminated, Reconstruction Finance Corporation was expressly designated in the Reconversion Act as one of the contracting agencies authorized to terminate war contracts. Sec. 601(b). Whatever may have been the status of Reconstruction Finance Corporation or Defense Plant Corporation at the time the contract was made is immaterial. De Laval Steam Turbine Co. v. United States, supra.

Appellant also contends that the Reconversion and Settlement Acts are not applicable to the contract in suit because it is not a "prime contract for war production" which the Reconversion Act, Sec. 202, authorizes to be terminated. The term "prime contract for war production" is not defined in the Reconversion Act, but the term "prime contract" is defined in the Settlement Act. The correlation between the Acts compels the conclusion that the Congress referred to the same type of contract in both instances. The Settlement Act, Sec. 3(a), declares a "prime contract" to be "any contract, agreement, or purchase order heretofore or hereafter entered into by a contracting agency and connected with or related to the prosecution of the war". The present contract, on its face, is clearly of this description. But even if it were not, this is not an issue of fact requiring resolution by the District Court, as a prerequisite to the judgment of dismissal. The Settlement Act, Sec. 20(b), provides that "any contracting agency may prescribe the amount and kind of evidence required to identify * * * any contract * * * as a war contract for any of the purposes of this act. Any determination so made * * * that any contract * * * is a war contract, shall be final and conclusive for any of the purposes of this act." Since the Congress intended the contracting agency to have exclusive jurisdiction to determine whether a contract is subject to the Settlement Act, whatever remedy that Act provides must be exhausted before the appellant may have judicial review of the agency's determination. Macauley v. Waterman Steamship Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; United States v. Sing Tuck, 1904, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917.

2. Appellant urges that the Settlement Act does not in haec verba command an initial administrative remedy. But the Act is none the less mandatory.[3]

---

3. The Supreme Court of Minnesota so held in Stevens v. Federal Cartridge Corporation, 1948, 226 Minn. 148, 32 N.W.2d 312

The considerations which motivated its passage make this abundantly clear.

At the time the Act was under consideration by the Congress there were in effect approximately 100,000 War Department prime contracts, involving a total of 43 billion dollars. These involved about 1,000,000 sub-contracts. The face amount of Navy contracts then in effect was 34 billion dollars. Already 21,774 War Department and 4,000 Navy Department contracts had been terminated.[4] Any attempt to have litigated termination claims affecting such a vast number of contracts would have swamped the judiciary. An orderly and uniform system of handling these claims was essential. Speedy settlements were necessary to provide contractors with the working capital to convert to other war production or to peacetime manufacture. The need for the initial judgment of an expert administrative board to facilitate settlement of such claims as ultimately reached the Courts is manifest. The Settlement Act was designed to meet these needs. Its purpose would be entirely thwarted if every dissatisfied contractor were permitted to bypass the administrative determination. In such a background, congressional intent is no will-o'-the-wisp, but stands out as clearly as if expressly stated. Similar considerations have prompted similar rulings in other federal administrative fields, e. g. see United States v. Ruzicka, 1946, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290.

3. Appellant's claim of compliance with the Settlement Act's requirements must be rejected. Some summarization of the Act's procedural requirements is here necessary.

Section 13a provides that whenever the contracting agency has not settled any termination claim by agreement, if the claim has been submitted in the manner prescribed by the Act, the agency, upon written demand by the contractor, shall determine the amount due and within ninety days deliver written findings indicating the basis of the determination.

Sections 13b and 13c stipulate that should the agency fail to deliver the findings, the contractor may, within one year of his demand, appeal to the Appeal Board established by the Act; or if the contracting agency is the Reconstruction Finance Corporation or any corporation organized pursuant to the Reconstruction Finance Corporation Act, 47 Stat. 5, 15 U.S.C. §§ 601 et seq., to any court of competent jurisdiction in accordance with existing law.

Concededly, no findings were delivered by the Reconstruction Finance Corporation. Thus appellant's right to maintain this action depends upon whether it has submitted a termination claim in the manner prescribed under the Act, and has made a written demand for findings at least ninety days prior to the commencement of the suit. The Act, itself, does not detail the manner in which termination claim must be submitted. Section 18a authorizes each contracting agency to prescribe the forms to be used by contractors. Section 4 authorizes the Director of Contract Settlement and the contracting agencies to prescribe general regulations to carry out the provisions of the Act.

Reconstruction Finance Corporation Contract Regulation No. 1, 9 F.R.12911, 13 C.F.R.1944 Supp. §§ 50.1 to 50.12, requires the contractor, upon receipt of a termination notice, to notify the agency whether he expects to present a termination claim. If he desires to submit a claim, negotiations must immediately be commenced by submitting a settlement proposal on such forms and in accordance with such instructions as may be prescribed by the Director of Contract Settlement; or, in the absence thereof, on such forms and in accordance with such instructions as may be approved by the contracting agencies.

Appellant admits that its notification of intent to present a termination claim, its settlement proposal, and its demand for findings must be found in two letters written by its President to the Recon-

---

4. These figures were contained in War and Navy Department statements presented to the Senate in May 1944 during the debate on the Contract Settlement Act by Senator George, co-author of the Act. (90 Congressional Record 3987.)

struction Finance Corporation. Both of these letters were written after appellant received instructions to suspend work on the plant but prior to the date it was notified the contract was terminated.

The substance of the letters was no more than a protest on appellant's part against the expected termination notice and a demand for the continuance of the contract. The only intent that can be deduced from them and from a subsequent letter of appellant's counsel (referred to but not set out in the record) is the intent to seek damages if respondent failed to carry on under the contract.

The objective of the Settlement Act was to settle claims of contractors. The first step to be taken by a contractor was to present a settlement offer or proposal. Reconstruction Finance Corporation Contract Regulation No. 1 supra. To treat any of the letters as such would require a feat of mental legerdemain.

■ Even if the letters be considered as a termination settlement proposal and demand for findings, respondent was entitled to the full period accorded by the Act in which to make its determination. The Act allows ninety days after receipt of the demand for findings. Since the regulations require that the settlement proposal and demand for findings be made after the contract is terminated, the agency is assured of at least ninety days following termination of the contract in which to make findings. Appellant argues that a premature proposal is adequate to apprise the agency of the

contractor's claim. But even though it were otherwise effective, a premature settlement proposal could not be availed of to force the agency into hasty action. Yet appellant, with inexplicable impatience, filed court action less than sixty days after the contract was terminated and less than ninety days after the second letter was mailed. We must conclude that appellant has made not even a colorable compliance with the Act.

■ One final matter calls for comment. It is argued that the claim for reimbursement of expenses incurred prior to the contract's termination is beyond the reach of the Acts and is entitled to judicial determination. We find this contention to be unmeritorious. The Settlement Act was designed "to assure to prime contractors and subcontractors, small and large, speedy and equitable final settlement of claims under terminated war contracts". Sec. 1(b). Thus one agency was entrusted with the duty of speedily and equitably settling claims of war contractors. The partitioning of claims and the funneling of them for settlement partly through the agency and partly through the Courts would completely negate the desired concepts of speed and equity.[5] A claim for reimbursement of expenses is just as much a claim under the Acts as any other resulting from termination. And, by the same token, equally measurable in dollars,—dollars immediately needed during the war if contractors were to be aided in converting to other war production or peace time enterprise.

Judgment affirmed.

5. As an indication of the breadth of the remedy, Section 3(h) of the Act defined termination claims to mean "*any claim or demand* by a war contractor for fair compensation for the termination of any war contract and any other claim under a terminated war contract, which regulations prescribed under the act authorize to be asserted and settled in connection with any termination settlement." (Emphasis supplied.)