# MONOLITH PORTLAND MIDWEST CO. v. RECONSTRUCTION FINANCE CORP.

Civ. No. 11816.

United States District Court
S. D. California, Central Division.
Jan. 22, 1951.

Joseph T. Enright, Gibson, Dunn & Crutcher, all of Los Angeles, Cal., and Henry F. Prince, William French Smith, Los Angeles, Cal., of counsel, for plaintiff.

Lillick, Geary & McHose, Allan E. Charles and William A. C. Roethke, all of Los Angeles, Cal., John F. Porter, San Francisco, Cal., R. C. Goodale, Washington, D. C., for defendant, Reconstruction Finance Corp.

JAMES M. CARTER, District Judge.

This case concerns the War Mobilization and Reconversion Act of 1944, Act of Oct. 3, 1944, c. 480, 58 Stat. 785, 50 U.S.C.A. Appendix, §§ 1651 to 1678, hereafter referred to as the Reconversion Act and the Contract Settlement Act of 1944, Act of July 1, 1944, c. 358, 58 Stat. 649, 41 U.S. C.A. §§ 101–125, hereafter referred to as the Settlement Act and the rights of a contracting party (plaintiff) whose contract with the defendant, Reconstruction Finance Corporation, was allegedly terminated under the above Acts. A previous case by the same plaintiff against the same defendant in this court, No. 6082–B, and seeking practically the same relief, was dismissed by Judge Beaumont on January 25, 1949, and the judgment of dismissal was subsequently affirmed on appeal in Monolith Portland Midwest Co. v. Reconstruction Finance Corporation, 9 Cir., 1949, 178 F.2d 854, certiorari denied, 1950, 339 U.S. 932, 70 S.Ct. 668, 94 L.Ed. ——, which will be hereinafter referred to as the Monolith case. The present case varies from the prior proceeding only in that since the Monolith decision, the plaintiff has exhausted its administrative remedies under the acts referred to above, and has so alleged in its complaint on file.

The matter comes before this court on three motions by the defendant, R.F.C.:

(1) A motion to dismiss or for summary judgment, based essentially on the District court decision by Judge Beaumont in the prior action, No. 6082–B of this court; the Monolith decision in the Court of Appeal referred to above, and the findings of fact and the determination of claim under the Settlement Act made by the R.F.C. dated June 7, 1950, whch are attached to the motion;

(2) A motion to strike certain portions of the complaint;

(3) A motion for a more definite statement.

### The Facts.

The action was commenced in the State court and removed to the District court under Title 28 U.S.C.A. § 1441, on the ground that the Reconstruction Finance Corporation was a Federal corporation whose stock was wholly owned by the United States, and on the further ground that the action is one for compensation against the United States, and is further founded on the Constitution and laws of the United States.

The complaint is entitled, "Complaint for damages and equitable and declaratory relief," and there are attached as exhibits, contracts of June 28, 1943 and April 18, 1944, designated as licensing agreements, and contract of June 23, 1943, and two amendatory contracts thereto, dated August 26, 1944, and September 28, 1944, concerning acquisition, construction, management and operation.

The contracts were between Defense Plant Corporation and the plaintiff. In 1945, the R.F.C. dissolved the Defense Plant Corporation and succeeded to its rights and liabilities under the contract. In substance, the contracts provided that Defense Plant Corporation was to furnish the money necessary to construct and operate a test plant to determine the feasibility of commercially extracting alumnae from native anorthosite ores, under a method developed by the plaintiff, and demonstrated a mutual desire of the plaintiff and the Defense Plant Corporation to determine the feasibility of this method. The plaintiff agreed to supervise the construction of a plant and to license to Defense Plant Corporation the use of its process.

The contracts contained no termination clause as such, except a provision giving

either party the right to cancel the *operating* agreement upon thirty days' notice at any time after sixty days from the time of the completion of the plant. The agreements further provided that the plaintiff operate the plant for ten years, and the Defense Plant Corporation agreed that should it decide to dispose of the plant during the continuance of the operating agreement, or within six months of its termination, plaintiff would have the first opportunity to purchase.

On July 25, 1946, plaintiff received a written "stop work" order from R.F.C. and on September 14, 1946, plaintiff received a written notice of termination dated September 10, 1946. On the latter date the plant was near completion. The notice of cancellation states that "The War Department has advised that the facilities (involved herein) * * * are no longer required for production for the Government and the Director of War Mobilization and Reconversion has directed this Corporation to terminate the aforesaid agreement dated June 28, 1943, as amended * * *". Although not expressly stated, the alleged termination was pursuant to the Reconversion Act referred to above. Plaintiff thereafter commenced its prior action in the District court November 7, 1946, resulting in the Monolith decision, supra.

The complaint herein prays judgment as follows:

*Sub. 1–5:* (of the prayer) for various sums of money for "compensation for services rendered," and "for reimbursement for disbursements and expenditures" and for interest.

*Sub. 6:* that the defendant be enjoined from (a) interfering with the right of plaintiff to possession of the plant; (b) reporting any of the real or personal property of the plant to the General Services Administration or from transferring, disposing, dismantling or removing the plant and for the sum of $600,000 for the cost of the completion of the plant, and for the sum of $1,500,000 for the cost of managing and operating the plant on an experimental basis for a test period.

*Sub. 7:* that in the alternative if plaintiff is not entitled to the relief prayed for in paragraph 6 of the prayer, that it have judgment against the defendant in the sum of $7,500,000 general damages, in addition to the particular amounts prayed for as services rendered, reimbursement, interest, etc., in paragraphs 1 to 5 of the prayer.

*Sub. 8:* that the court adjudicate the legal rights and duties of the parties.

Generally speaking, the allegations in the complaint and the prayer are similar to those in the prior action, except that the plaintiff has alleged the exhaustion of its administrative remedies under the acts referred to above.

The claim made by the plaintiff dated January 16, 1950, and filed with the R.F.C. instituting administrative proceedings is as extensive (if not more so) as the prayer of the present complaint, and in particular claims the same monetary items referred to in paragraphs 1 to 5 of the prayer of the complaint; the possession of the plant, injunction, the sums of $600,000 to complete it, and the sum of $1,500,000 for the test run similar to paragraph 6 of the prayer of the complaint; and contains the alternative claim in the sum of $7,500,000 damages (in addition to the monetary claim in paragraphs 1 to 5 of the complaint) in the event plaintiff does not secure possession, injunction and the $600,000 to complete and the $1,500,000 for a test run, similar therefore to paragraph 7 of the prayer of the complaint.

The ultimate question presented is whether or not the contractor (plaintiff) after the termination of the contract or a breach as alleged by the plaintiff, may sue in the District court for damages for breach of contract and for equitable relief without reference to the measure of compensation provided for by the Settlement Act, after it has exhausted its administrative remedy by filing a claim, after failure to effect settlement and after findings of fact and determination of amount of claims have been made by the agency (R.F.C.). Specifically, questions are presented concerning (1) the interpretation of the Reconversion and Settlement Acts; (2) whether they apply to prior contracts; (3) the effect of the exhaustion of administrative remedies; (4)

conceding that Congress has power to enact legislation providing for termination, has Congress exercised that power in the Reconversion and Settlement Acts; (5) the effect of the "Impairment of contract" clause in the Settlement Act; (6) the effect of the Administrative finding that the contract in question was a "prime contract for war production"; (7) was the contract properly terminated; (8) finally, the ultimate question as to whether plaintiff may sue for damages for breach of contract and equitable relief or whether plaintiff's remedy is to "fair compensation" as defined and limited by the terms of the Settlement Act.

### The Law

#### I.

█ The Settlement Act and the Reconversion Act must be read together. Becoming effective on July 1, 1944, and October 3, 1944 respectively, the " * * * Acts were designed to promote the orderly termination and settlement of war contracts. Each was an essential element of a unitary remedy. The Reconversion Act incorporated the Office of Contract Settlement, established by the Settlement Act, into the Office of War Mobilization and Reconversion. * * * " Monolith case, supra, 178 F.2d at page 857.

#### II.

█ The Acts apply to contracts previously made. The Settlement Act expressly provided that a "prime contract" included such a contract "heretofore or hereafter entered into". Settlement Act, Sec. 3(a), 41 U.S.C.A. § 103(a). Since the Acts must be read together and since one supplements the other and they are each part of a "unitary remedy", we hold that the Reconversion Act also applies to contracts entered into before the passage of the Act. This was so decided in the Monolith case, supra.

#### III.

It is argued that the Monolith case, supra, does not so hold because of a contention that constitutional issues must await the exhaustion of prescribed administrative remedies. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; rehearing denied. The record here shows the exhaustion of such remedies and the contention cannot apply in this case.

#### IV.

█ It is conceded that Congress has the *power*[1] to enact legislation providing for the termination of war contracts but it is contended that Congress did not *exercise* that power[2] in the Settlement and Reconversion Acts.

█ We believe Congress did exercise its constitutional powers in these Acts. Sec. 202, Reconversion Act, 50 U.S.C.A. Appendix, § 1657, states, "Any contracting agency shall terminate prime contracts for war production" where performance is no longer needed for the prosecution of the war. It is argued that this was a statement of Congressional policy only. But Congress in the Reconversion Act placed within the office of War Mobilization and Reconversion the office of Contract Settlement, Reconversion Act, § 101(b) (1), 50 U.S.C.A. Appendix, § 1651(b) (1), created by the prior Settlement Act.

█ The Monolith case holds the two Acts constitute a "unitary remedy." Reading the Acts together, the various provisions of the Settlement Act impel the conclusion that Congress intended Sec. 202 of Reconversion Act, 50 U.S.C.A. Appendix, § 1657, to be more than a statement of policy and to in fact not only *empower* the

---

1. The concession must be made. The War Powers of the Congress are sufficient for such purpose. Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (also cited as Pownall v. United States); De Laval Steam Turbine Co. v. United States, 284 U.S. 61, 52 S.Ct. 78, 76 L.Ed. 168; Russell Motor Car Co.

v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778.

2. Plaintiff relies on United States v. Penn Foundry & Mfg. Co., Inc., 337 U.S. 198, 205–206, 69 S.Ct. 1009, 93 L.Ed. 1308, 1314–1315. Although the Government argued the right of termination because of the facts of the case, the court never reached the question.

agency but also *compel* the agency to terminate war contracts where performance was no longer needed for the prosecution of the war.

Had Congress intended Sec. 202 of the Reconversion Act, 50 U.S.C.A. Appendix, § 1657, to be merely a statement of policy, Congress would have used the words "should terminate" instead of "shall terminate." It was not necessary for Congress to recite in the statute that it possessed the power to authorize contracting agencies to terminate war contracts. Congress used simple and clear language empowering and compelling agencies to terminate war contracts.[3]

### V.

■ Plaintiff relies on the "Impairment of contract" clause of the Settlement Act, Sec. 20(e), 41 U.S.C.A. § 120(e). The interpretation of the Settlement Act and the Reconversion Act must take into account the sequence of events and the facts existing at the time of the passage of the Acts.

On July 1, 1944 and October 3, 1944, the war with Germany and Japan was still in progress. Congress had enacted the Renegotiation Acts, 50 U.S.C.A. Appendix, § 1191.[4] The Navy Department, through Forrestal, had reported to a committee of Congress on October 10, 1943 and January 11, 1944[5] that standard termination clauses since 1941 had been inserted in most Navy contracts.

" * * * At the time the Act was under consideration by the Congress there were in effect approximately 100,000 War Department prime contracts, involving a total of 43 billion dollars. These involved about 1,000,000 sub-contracts. The face amount of Navy contracts then in effect was 34 billion dollars. Already 21,774 War Department and 4,000 Navy Department contracts had been terminated. * * *" The Monolith case, supra, 178 F.2d at page 859.

Our economy was geared to war but victory and peace were anticipated. Obviously Congress was looking beyond the end of the war and toward the post war period, and was considering the impact on our post war economy of the vast multitude of war contracts and subcontracts.

In this setting Congress passed the Settlement Act and on July 1, 1944 it became law. It provided a comprehensive method of termination to be followed by (a) settlement or (b) administrative proceedings and determination of claims. It did not provide for termination of war contracts.

It is possible that the Congress, in enacting the Settlement Act, believed that by Sec. 6(g), 41 U.S.C.A. § 106(g), it had adequately provided for termination of all war contracts. That section reads, "Where any war contract does not provide for or provides against such fair compensation for its termination, the contracting agency, either before or after its termination, shall amend such war contract by agreement with the war contractor or shall authorize, approve, or ratify an amendment of such war contract by the parties thereto to provide for such fair compensation."

It is obvious the section did not go far enough and section 202, 50 U.S.C.A. Appendix, § 1657, of the Reconversion Act was a logical next step by Congress, and certainly controls over section 6(g) of the Settlement Act, and obviates any discussion as to

---

**3.** The plaintiff contrasts the statute authorizing the President during World War I to modify, cancel or suspend contracts, Act of June 15, 1917, 40 Stat. 182, with the statute herein, Reconversion Act, Sec. 202. Plaintiff relies on the cases holding the United States is liable on its contracts (in the absence of statutes authorizing cancellation or termination). United States v. Smith, 94 U.S. 214, 217, 24 L.Ed. 115; Priebe & Sons v. United States, 332 U.S. 407, 413, 68 S.Ct. 123, 92 L.Ed. 32, 39; United States v. Standard Rice Co., 323 U.S. 106, 65 S.Ct. 145, 89 L.Ed. 104; Lynch v. Unit-

ed States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898, 901.

**4.** See Note 1, Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694. The Act covered the period from April 28, 1942 through February 25, 1944. An act to extend the termination date was approved June 30, 1945.

**5.** See notes 3 and 4, United States v. Penn Foundry & Mfg. Co., 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308.

the purpose of section 6(g) under the facts of this case.

The Settlement Act contained Sec. 20(e), 41 U.S.C.A. § 120(e), entitled "Impairment of contract".

"Nothing in this chapter shall be deemed to impair or modify any war contract or any term or provision of any war contract or any assignment of any claim under a war contract, without the consent of the parties thereto, if the war contract, or the term, provision, or assignment thereof, is otherwise valid."

At this point there was nothing inconsistent between Sec. 20(e) and the balance of the Act.

■ Three months later, and in the same setting as existed when the Settlement Act became law, Congress passed and there became effective on October 3, 1944, the Reconversion Act of 1944, with its Sec. 202, 50 U.S.C.A.Appendix, 1657. Congress intended the two acts to constitute one "unitary remedy." To the extent that there was then inconsistency between Sec. 20(e) of the Settlement Act and Sec. 202 of the Reconversion Act, the latter section controlled and in substance superceded Sec. 20(e). The termination of contracts by the Government impairs contracts but the Government's war powers sustain such action.

We do not look upon this question as a serious problem. The situation is much as if Congress, by the Reconversion Act, added to Sec. 20(e), 41 U.S.C.A. § 120(e), of the Settlement Act, the words "subject to the power of the United States, and to the direction of the United States to its agencies to terminate war contracts as provided in Sec. 202."

### VI.

The contract in question was a "prime contract for war production", Monolith case, supra, 178 F.2d at page 858. The Settlement Act, Sec. 20(b), 41 U.S.C.A. § 120(b), authorizes the contracting agency to determine whether a contract is a war contract and the finding is final and conclusive.

The findings of the R.F.C. attached to the motion for summary judgment state,

"that said agreement was at all times until terminated, a prime contract for war production within the meaning and terms of the War Mobilization and Reconversion Act of 1944."

We do not read the complaint as seeking a review of this finding and in any event the undisputed facts show clearly that the finding is correct.

### VII.

■ The contract was properly terminated by R.F.C. As the contract was a war contract, it follows: (1) it could be lawfully terminated by the Director of War Mobilization and Reconversion, and (2) the Settlement Act applied.

The circumstances of termination are stated in the findings, a copy of which is attached to "Exhibit A" of defendant's motion to dismiss and for summary judgment as follows: " * * * A Stop Work Order was issued by R.F.C. on July 25, 1946 * * *. This order [Stop Work Order] stated in part:

" 'The operation of the facilities covered by operating agreements between Defense Plant Corporation and your Company under Plancor 1844 were not terminated upon cessation of military hostilities by reason of the finding of the Director of War Mobilization and Reconversion under Section 202 of the War Mobilization and Reconversion Act of 1944 that the continuation of the operation of said facilities would benefit the Government. The Director of War Mobilization and Reconversion has now found that it is in the best interest of the Government to effect the termination of the Operating Agreement between DPC and your Company at the earliest practical date. * * * Accordingly, at this time you are advised that all work, both on the acquisition and construction program and the operating program will be stopped immediately * * *.'

"On September 10, 1946, R.F.C. formally advised Monolith that the contract of June 28, 1943, would terminate effective 30 days after receipt of the notice. Following is the pertinent excerpt from the notice of termination which became effective October 14, 1946:

" 'The War Department has advised that the facilities included under the captioned Plancor are no longer required for production for the Government, and the Director of War Mobilization and Reconversion has directed the Corporation to terminate the aforesaid Agreement dated June 28, 1943, as amended; therefore, this Corporation (as successor to Defense Plant Corporation) hereby gives Notice of Cancellation of the aforesaid Agreement, as amended, effective thirty (30) days after the receipt of this Notice of Cancellation by your Company.' "

The District Judge in the prior action No. 6082, in the judgment of dismissal held that the termination of the contracts was proper action by the defendant. It is urged by defendant that because of the decision in the Monolith case, supra, affirming the judgment of the District Court, that this basis of decision by the District Court is res adjudicata of the problem here. We have serious doubts as to the correctness of this contention, in view of the fact that any one of several grounds might have been used to affirm the District Court's decision, and in fact the decision of the District Court was sustained on its finding that the plaintiff must first exhaust its administrative remedy.

We believe the District Court was correct in its holding that the contract was properly terminated and we consider the District Court's holding a persuasive authority on the problem when presented to another member of this multiple court, but we do not find that the doctrine of res adjudicata applies.

### VIII.

The question remains as to what remedies the plaintiff now has in view of the application of the Settlement Act and the Reconversion Act, to the contracts involved in this case.

It is obvious that Congress set up a complete and orderly administrative plan for the termination and settlement or determination of war contract claims which entailed the following elements:

(1) The submission of a claim by the contractor to the contracting agency. The Settlement Act is mandatory. The Monolith case, supra, 178 F.2d at page 858.

(2) Methods and standards for determining fair compensation; Sec. 6, Settlement Act, 41 U.S.C.A. § 106.

(3) Procedures to effect speedy settlements by use of methods and standards to insure the contractor "fair compensation" and the ability to speedily reconvert to peacetime production; Sec. 6, Settlement Act, 41 U.S.C.A. § 106.

(4) Where settlement was not effected, procedures were set up requiring the contracting agencies to make findings of fact and determination of the amount due on the claims of the war contractors. Sec. 13, Settlement Act, 41 U.S.C.A. § 113.

(5) If the war contractor was aggrieved with the findings and the determinations made on his claims, then under Section 13(b) of the Settlement Act, 41 U.S.C.A. § 113(b), such war contractor might, at his election, (1) appeal to the Appeal Board set up in the Act, or (2) "bring suit against the United States *for such claim* or such part thereof, in the Court of Claims or in a United States district court * * *" [emphasis added] within ninety days after delivery to the war contractor of the findings by the contracting agency; Sec. 13(c) (2), Settlement Act, 41 U.S.C.A. § 113(c) (2).

(6) It is further provided that the court "shall not be bound by the findings of the contracting agency, but shall treat such findings as prima facie correct, and the burden shall be on the war contractor to establish that the amount due on his *claim* or part thereof exceeds the amount allowed by the findings of the contracting agency. * * *" [Emphasis added.] Sec. 13(c) (3), Settlement Act 41 U.S.C.A. § 113(c) (3).

The plaintiff has filed its claim, settlement procedures have failed, the findings and the determination have been made by R.F.C. and within ninety days after the delivery to the plaintiff of the findings, the plaintiff filed this action.

■ Both parties have cited legislative history.[6] This at best is only an aid in determining Congressional intent. The court does not find the legislative history persuasive or decisive.

■ In view of the complete and orderly procedure set up by the Settlement Act, in view of the obvious purpose of the Congress to set up procedures for the settlement and determination of war contract claims which would otherwise have swamped the courts of the country, in view of the standards for fair compensation and the particular references to the "claim" of the contractor in the sections dealing with his suit, it follows that the contractor (1) is limited to the scope and extent of his filed claim in any action that he may bring in the District court following findings and determination by the contracting agency, and (2) that the filed claim in turn is limited as to its allowable scope and extent by the provisions of the Settlement Act and by its specific reference to *fair compensation*.

In several decisions, it is evident that the parties and the courts assumed that the standards of recovery provided for by the Settlement Act, were applicable in the courts. In Daniel Hamm Drayage Co. v. Willson, 8 Cir., 178 F.2d 633, at page 636, the court said: "* * * The Contract Settlement Act embodies a complete code of procedure. * * * The procedure provided in the Act is exclusive. * * *"

In Thompson Foundry & Machine Co. v. United States, D.C.Ga.1946, 67 F.Supp. 121, it was held that the claim on which Section 13(b) (2) of the Settlement Act, 41 U.S.C.A. § 113(b) (2), permitted suit, was the claim filed with the contracting agency, and that the amount of that claim determined jurisdiction with respect to the Tucker Act.

See also Piggly Wiggly Corp. v. United States, 81 F.Supp. 819, 112 Ct.Cl. 391; Mead Screw Products Inc. (WDBCA No. 437, 1944) 2 CCF 693; Producers Laboratories Inc. v. Department of the Army, Office of Contract Settlement Appeal Board, Proceedings No. 47 and 225, June 10, 1948, 4 CCF Par. 60, 542; Aircraft Fueling Co. Inc. v. Department of the Navy, Office of Contract Settlement Appeal Board, Proceedings No. 186, June 30, 1948, 4 CCF Par. 60, 543.

## A. The Remedy of Specific Performance and Injunction.

■ Plaintiff in this court seeks the remedy of specific performance and the remedy of injunction. Although this prayer for relief is contained within his claim filed with the contracting agency as well as in the prayer of its complaint, it is obvious that this relief is not available. The purpose of the Settlement Act and the Reconversion Act enacted by Congress pursuant to its war power would have been defeated if specific performance and injunction were available as remedies under war contracts, subject to these Acts. If the termination of such contracts had been generally enjoined, successful prosecution of the war would have been prevented and successful reconversion from war to peace industry seriously impaired.

It is urged that the judgment of the District Court is res adjudicata on this problem. We incorporate our previous remarks concerning the effect of the District Court judgment.

---

6. Legislative history.
    Cited by defendant; Senate Report 836 May 2, 1944, U.S.Code Congressional Service 78th Congress, 2nd session, 1944, p. 1161 at 1164. Congressional Record 78th Congress, 2nd session, 1944 part 2, p. 1583, column 3. Congressional Record 78th Congress, 2nd session, 1944, part 3, p. 6052, column 1.
    Cited by plaintiff; Congressional Record Vol. 90, part 5, 78th Congress, 2nd session, p. 6153.

See also; Re Reconversion Act; Committee of Conference, House Report No. 1902, Sept. 19, 1944, U.S.Code Congressional Service, 78th Congress, 2nd session, 1944, p. 1310–1316.
    Re Settlement Act; Report of the House Committee on the Judiciary, House Report No. 1590 June 1, 1944, U.S.Code Congressional Service, 78th Congress, 2nd session, 1944, p. 1166–1171. Also additional views by Emanuel Celler, U.S.Code Congressional Service 78th Congress, 2nd session, 1944, p. 1171–1173.

## B. The Remedy of Damages for Breach of Contract.

The plaintiff seeks by the prayer of its complaint, damages for the alleged breach or termination of the contract. Damages are also asked in the claim filed by the plaintiff, but damages as such are not permitted under the Reconversion Act or the Settlement Act. The use of the words "fair compensation" and the yardsticks set forth in the Settlement Act show clearly that ordinary contract relief is not available to the contractor after recourse to the administrative agency. The phrase "fair compensation" is appropriate to an exercise of the power of eminent domain rather than to an action for breach of contract. The termination of war contracts under the Reconversion and Settlement Acts is closely analogous to an action for condemnation, and the type of relief granted under the Acts is likewise analogous. See De Laval Steam Turbine Co. v. United States, 284 U.S. 61, at pages 70–71, 52 S.Ct. 78, 76 L.Ed. 168; Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778.

Damages for breach of contract would, on occasion, be greater than the total contract price. Congress had this in mind in enacting Sec. 6(d) of the Settlement Act, 41 U.S.C.A. § 106(d), stating, "The aggregate amount of compensation allowed in accordance with this subsection * * * shall not exceed the total contract price reduced by the amount of payments otherwise made or to be made under the contract."

Our problem is one that arises from a war; a war in which millions of young men were drafted and their lives and bodies subjected to its hazards; a war in which in excess of a million contracts (prime and sub-contracts, running into the billions in dollars, were executed for war production; a war in which contracts were necessarily impaired by renegotiation; a war in which practically our entire industrial machine was geared to producing the things necessary for victory).

The standard of fair compensation contained in the Settlement Act is an equitable standard and applies to all war contractors. It is just, equitable and obvious that "fair compensation" should be the limit of a contractor's claims, when the need for its performance ceased and its war contract was terminated. We think Congress so intended.

## C. The Remedy of a Claim for "Fair Compensation."

The complaint also specifically sets forth the monetary claims of the plaintiff contractor. As such it substantially complies with the Settlement Act as a suit on the claim or an appeal from the determination made by the contracting agency, except that the findings of fact and the determination by the agency are not set forth in the complaint. These elements of monetary claim are similar to and within the scope and extent of the claim as filed with the R.F.C. To that extent alone does the complaint state a cause of action under the Settlement Act.

Accordingly, the motions to dismiss and for summary judgment are denied. The motion to strike is granted as to all that portion of paragraph VII of plaintiff's first cause of action in which it is asserted that defendant has failed and refused and continues to fail and refuse to perform its duties and obligations as required by the terms and conditions of said contracts; and is granted as to paragraph X of the first cause of action, and as to each and every allegation of all of the paragraphs of plaintiff's alleged second cause of action. The motion to strike is denied as to plaintiff's third cause of action in that it sets forth a cause of action for declaratory relief and this court, by this opinion, has declared the rights of the parties in the controversy between them.

The motion for a more definite statement will be denied, but leave will be granted to the plaintiff if it so desires, to file within a period of thirty days, an amended complaint eliminating the matters involving claim for damages, claim for injunction, claim for specific performance and limiting itself to a claim for fair compensation on a termination claim under the Settlement Act, and containing those matters within its original claim to the R.F.C. which are consistent with the provisions of this opinion.