**MONOLITH PORTLAND MIDWEST CO. v. RECONSTRUCTION FINANCE CORP.**

Civ. No. 11816.

United States District Court
S. D. California, Central Division.

Feb. 20, 1952.

Gibson, Dunn & Crutcher, Richard E. Davis, and Joseph T. Enright, Los Angeles, Cal., for plaintiff.

Lillick, Geary & McHose, and Allan E. Charles, Los Angeles, Cal., for defendant.

JAMES M. CARTER, District Judge.

The issue raised here is, "Whether or not a prime War Contractor, aggrieved of the findings of the contracting agency on his claim which had been filed pursuant to the war Contract Settlement Act of 1944, 41 U.S.C.A. §§ 101–125, is entitled to a jury trial when he seeks relief under Section 13(b) (2), 41 U.S.C.A. § 113(b) (2), of the Act?"

The facts of the present case are found in two former opinions, Monolith Portland Mid. Co. v. R. F. C., 9 Cir., 1949; 178 F.2d 854, and Monolith Portland Mid. Co. v. R. F. C., 9 Cir., 1951, 95 F.Supp. 570.

Since the Act is silent on the right to jury trial, it becomes necessary to review the Act, its history, and the nature of the action to discover the intent of Congress.

**I.**

**A. Purpose of the Act.**

The purpose for which the Act was passed is clear. 41 U.S.C.A. § 101. To preserve the national economy, Congress had to provide a quick, efficient and equitable method of settling terminated war contracts and of expediting reconversion. One of the objectives was to achieve *uniformity* not only among Governmental agencies charged with termination settlements and interim financing, 41 U.S.C.A. § 101(c) but also among instrumentalities of Government which Congress appointed to hear and decide such claims. See 41 U.S.C.A. §§ 106(b) and (d).

**B. Settlement of Claims.**

The primary method established by Congress for the disposition of claims was by way of settlement. This was to be conducted by the contracting agency itself. Congress was hopeful that the majority of claims would be terminated in these settlement procedures, but recognized that some contractors would not agree to the settlement offers and therefore provided methods for the determination of claims and the review thereof.

**C. Review of Claims.**

Unable to determine how many contractors would seek a review, Congress provided by Section 13(b), 41 U.S.C.A. § 113 (b), of the Act, the methods by which a war contractor could obtain this review. It provided that the contractor may, at his election:

"(1) appeal to the Appeal Board in accordance with subsection (d) of this section; or

"(2) bring suit against the United States for such claim or such part thereof, in the Court of Claims or in a United States district court, in accordance with section 1346 of Title 28, except that, if the contracting agency is the Reconstruction Finance Corporation, or any corporation organized pursuant to sections 601–617 of Title 15, or any corporation owned or controlled by the United States, the suit shall be brought against such corporation in any

court of competent jurisdiction in accordance with existing law."

D. History of Section 13.

A review of the Congressional debates and Committee reports discloses that § 13 (b), 41 U.S.C.A. § 113(b) did not create any great conflict among the members. It was generally agreed that adopting a procedure for a review of the contracting agency's determination, would be fair both to the Government and to the war contractors. In discussing this section on the floor of the House, Congressman Walters, one of the authors of the bill said: "To take care of cases where the agency and the contractor cannot agree, the bill provides for *a system of appeals to local appeal boards and to the courts*. This will protect contractors against arbitrary action by any agency in determining the amount due * * *." Congressional Record, 78th Congress, 2nd session, 1944, Vol. 90, part 2, p. 6052, column 3. [Emphasis added.]

In the Senate we find a report from the Special Committee on Post-War Economic Policy and Planning, with its recommendations, read into the Record by Senator George. In part, it reads as follows:

"In the suggested section 13(a) the time within which findings were made mandatory was extended from 60 to 90 days. The contracting agencies universally felt that if a shorter time was provided an unnecessarily large number of cases would go to *appeal* without findings.

"It is suggested that subsection (b) be amended to make it clear that *appeal* could be had where the decision went only to a portion of the claim.

"In subsection (b) (2) an amendment is suggested to preserve State Court jurisdiction over the RFC and its subsidiaries." Congressional Record 78th Congress, 2nd session, 1944, Vol. 90, part 3, p. 3907, column 2. [Emphasis added.]

As seen, the bill as finally passed contained the proposed amendments.[1]

It is clear that throughout the entire discussions on Section 13(b), 41 U.S.C.A. § 113(b), the section has been referred to as a method of appealing from the determination of the contracting agency. It is equally clear that the Record is void of any mention of the right to jury trial.

E. Nature of the Action.

The primary purpose of Section 13(b), 41 U.S.C.A. § 113(b), is to provide an aggrieved war contractor with a method of reviewing the contracting agency's determination of their claims. If the true nature of the action is that of an "appeal" from an administrative determination[2] Rumsey Mfg. Corp. v. United States Hoffman Machinery Corp., 2 Cir., 1951, 187 F.2d 927, 929, then in the absence of an express statutory grant, no jury trial is available.

Plaintiff argues that, basically this is an action at law predicated upon certain contractual rights and therefore the right to jury trial is guaranteed. They further argue that the act provides that when a war contractor is aggrieved of the findings of the contracting agency he may "bring suit" against the Reconstruction Finance Corporation "in any court of competent jurisdiction in accordance with existing law," and that these words show that Congress intended that the action be one at common law with the concomitant right to jury trial. What plaintiff has failed to observe is that the right to bring the action is not on the contract, but is expressly limited to an action on the claim or part thereof. The clear expression by Congress that the action is to be pursued on the "claim" and not on the contract distinguishes the nature of the action from the ordinary common law action for breach of contract.

Although no direct authority can be found on the issue before us, authority directly in point can be found in an analogous situation, namely condemnation.

1. See also Senate Report #836, May 2, 1944, U.S.Code Congressional Service, 78th Cong. 2d Sess.1944, p. 1164, Congressional Record, 78th Cong., 2nd Sess. 1944, Vol. 90 part. 5, p. 6059, column 3.

2. Congress has entitled Section 13, 41 U.S. C.A. § 113, "Appeals" and not "Actions" etc. While the title of a section or chapter will not limit the plain meaning of the text, it may be of aid in resolving an am-

In our prior decision, Monolith case, supra, 95 F.Supp. at page 579, we indicated that the effect of the application of the Contract Settlement Act and the War Mobilization and Conversion Act upon war contracts was analogous to condemnation. It is clear there is no constitutional right to trial by jury in a condemnation action in the absence of a specific statutory grant. Bauman v. Ross, 1896, 167 U.S. 584, 593, 17 S.Ct. 969, 42 L.Ed. 270; Dohany v. Rogers, 1929, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904; U. S. v. Hess, 8 Cir., 1934, 70 F.2d 142; U. S. v. Hess, 8 Cir., 1934, 71 F.2d 78; Iriarte v. U. S., 1 Cir., 1946, 157 F.2d 105.[3]

The primary question in condemnation proceedings is the same as here, i. e. "fair compensation." Its determination, in the absence of express statutory provisions to the contrary, is to be made by the court without the aid of a jury trial.

To summarize then, we find that actions brought under Section 13(b), 41 U.S.C.A. § 113(b), of the War Contract Settlement Act of 1944 are primarily in the nature of an appeal to review the findings of an administrative agency. It is not an ordinary action for breach of contract since the action is expressly limited to an action on the "claim or part thereof". At best, it is analogous to a condemnation action since the primary issues are the same in both actions. The nature of the action is not one, therefore, which demands the granting of a jury trial.

F. Other Reasons.

There are other reasons which lead this court to the conclusion that Congress did not intend to have these claims tried before a jury. Stated briefly they are as follows:

(1) The act provides for concurrent jurisdiction in (a) the Appeal Boards, (b) the Court of Claims (c) the District courts and (d) the State courts, under certain situations of which this case is one. Since neither the Appeal Boards nor the Court of Claims afford jury trials, uniformity would require that the action on these claims be heard by the Court alone.

(2) Throughout the entirety of Section 13, 41 U.S.C.A. § 113, reference is made to the Appeal Boards or Court of Claims or *Court* in such manner as to infer that this means the "Judge" of the Court sitting alone. Although this factor alone is not persuasive in showing the legislative intent, combined with all the other factors it logically leads to the conclusion. Allen v. United States, D. C., 1926, 10 F.2d 807, 809.

(3) Congress took great pains to specify the qualifications of those who were to sit on the newly created Appeal Boards. The Act provides that they shall be "qualified and experienced attorneys, engineers, accountants, or persons possessing sufficient business experience or professional skill." 41 U.S.C.A. § 113(d). To have required less would have resulted in inequities either to the Government or to the contractors, a situation which Congress sought to prevent. It seems rather doubtful that such great care in spelling out these qualifications would have been taken, if Congress had at the very same time contemplated trial by jury as an alternative remedy.

In light of all the above factors, it is the opinion of this court that the purpose of adopting Section 13(b), 41 U.S.C.A. § 113(b), was to provide aggrieved war contractors with a method of reviewing or appealing the contracting agency's determination and that such review was to be conducted by the Appeal Boards or the Courts without the intervention of a jury.

---

biguity found therein. Maguire v. Commissioner of Internal Revenue, 1940, 313 U.S. 1, 61 S.Ct. 789, 85 L.Ed. 1149.

3. The action of the Supreme Court in adopting new Rule 71A of the Rules of Civil Procedure 28 U.S.C.A. demonstrate this. This rule became effective on August 1, 1951. It had been adopted by the Supreme Court by order on April 30, 1951 and transmitted on May 1, 1951 to Congress. When Congress failed to

disapprove the rule, it became effective as above stated on August 1, 1951.

Rule 71A(h) providing for jury trial only under certain specified circumstances makes it clear that the Supreme Court was of the opinion that there was no constitutional right to trial by jury in a condemnation matter.

See also, notes of House Document No. 121, page 31, 82nd Congress, 1st Session on the point that there is no constitution-

## II.

Plaintiff relies heavily upon the case of United States v. Pfitsch, 1921, 256 U.S. 547, 41 S.Ct. 569, 570, 65 L.Ed. 1084. That case is not controlling here for the language regarding the right to jury trial was mere dicta.

The precise issue before the court in the Pfitsch case was whether or not the Supreme Court had jurisdiction. Property had been requisitioned by the President pursuant to Section 10 of the Lever Act.[4]

The property was appraised by the board established for that purpose. Dissatisfied with the appraisal, Pfitsch brought action in the District court pursuant to Section 10 of the Lever Act. Both sides waived the jury. The District court granted a higher allowance and the Government appealed on direct writ of error to the Supreme Court, on the grounds that interest should not have been allowed.

The Supreme court was faced with determining whether the appeal was proper. If Section 10 of the Lever Act placed exclusive jurisdiction in the Federal District court, then the Government should have appealed to the Circuit court. If however, the Federal District court had concurrent jurisdiction with the Court of Claims, then, the appeal was proper.

In reviewing the Act, the Supreme Court found that three later sections provided for a completely different manner for a dissatisfied person to sue the United States.[5]

This difference was the result of "deliberate action in the face of opposition." [6] The legislative history of the Act showed that the Senate attempted to make Section 10 identical with Sections 12, 16 and 25. The House refused to accept this change. The Senate receded and accepted the difference in jurisdictional provisions between Section 10 and the other three sections.

Faced with this clear showing of Congressional intent, the Supreme court properly concluded that Section 10 conferred exclusive jurisdiction in the Federal District courts.

We find nothing in the Pfitsch case which controls our decision.

For the reasons given it becomes unnecessary to consider the other contentions as to "waiver" raised by the parties.

Defendant's motion to strike request for jury trial is therefore granted.

---

al right to trial by jury in a condemnation proceeding.

4. August 10, 1917, c. 53, 40 Stat. 276, 279 "Section 10 provides that the President may requisition foods, feeds, fuels, and other war supplies with the necessary storage facilities, and that he shall ascertain and pay just compensation for them. But if any person is not satisfied with the President's award he is to receive 75 per cent. of the award and for the balance claimed 'shall be entitled to sue the United States * * * and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies.'" U. S. v. Pfitsch, 1921, 256 U.S. 547, 549–550, 41 S.Ct. 569, 65 L.Ed. 1084.

5. Section 12, relating to factories, mines and pipe lines; Section 16, to distilled spirits; and Section 25, to coal or Coke, plants or businesses,—provided "that a person dissatisfied with the President's award 'shall be entitled to sue the United States * * * in the manner provided by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code.' The latter of these sections of the Judicial Code confers jurisdiction upon the Court of Claims to adjudicate claims against the United States, and the former confers upon the District Courts jurisdiction concurrent with the Court of Claims in cases which do not involve more than $10,000. Thus, while sections 12, 16, and 25 of the Lever Act, in terms, confer jurisdiction concurrently upon the Court of Claims and the District Courts sitting as a Court of Claims, section 10, in terms, confers jurisdiction to hear all cases arising under it upon the District Courts alone." U. S. v. Pfitsch, 256 U.S. 547, 550, 41 S.Ct. 569, 570, 65 L.Ed. 1084.

6. U. S. v. Pfitsch, supra, 256 U.S. at page 551, 41 S.Ct. at page 570.