MACAULEY, ACTING CHAIRMAN OF THE UNITED STATES MARITIME COMMISSION, ET AL. *v.* WATERMAN STEAMSHIP CORP.

No. 435.   Argued February 27, 28, 1946.—Decided March 25, 1946.

---

Robert L. Stern argued the cause for petitioners. With him on the brief were Solicitor General McGrath, Assistant Attorney General Sonnett, David L. Kreeger and Joseph B. Goldman.

Bon Geaslin argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Renegotiation Act [1] authorizes the Chairman of the Maritime Commission under certain conditions prescribed by the Act to renegotiate war contracts made with the Commission for purposes of eliminating excessive profits. Respondent Waterman Steamship Corporation brought this suit against the Chairman of the Maritime Commission and the Maritime Commission Price Adjustment Board seeking a declaratory judgment that certain contracts to which it was a party were not subject to the Renegotiation Act and an injunction prohibiting further renegotiation proceedings involving these contracts. The complaint alleged the following facts here relevant: The Maritime Commission Price Adjustment Board notified Waterman that it had been assigned to renegotiate Waterman's contracts with the Commission and to determine the amount of excessive profits, if any, realized by Waterman. Waterman was requested to attend an initial conference and to supply information concerning these contracts, which included certain Red Sea charters. Waterman in his reply to the Board denied its authority to renegotiate the Red Sea charters on the ground that these had been made with the British Ministry of War Transport and not with the Maritime Commission. The Price Adjustment Board in its answer to Waterman insisted that while the Red Sea charters were signed by the British Ministry for "technical reasons," they had been negotiated with Waterman by the Maritime Commission on behalf of the United States Government which was now responsible for paying the obligations incurred, and that they were therefore renegotiable contracts with the Commission.[2] Respondent refused to furnish the information re-

---

[1] 56 Stat. 226, 245; 56 Stat. 798, 982; 57 Stat. 347; 57 Stat. 564; 58 Stat. 21, 78.

[2] Part of the Price Adjustment Board letter read as follows:

"On April 30, 1941 the President wrote the Chairman of the Maritime Commission and directed him 'as part of the defense effort to

quested and brought this suit in the District Court. That court, relying on *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, dismissed the complaint on the ground that Waterman had failed to exhaust the administrative remedies provided by Congress in the Renegotiation Act. The Court of Appeals reversed. 151 F. 2d 292. We granted certiorari because of the importance of the question involved.

The District Court properly held that this case should be dismissed on the authority of *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41. In that case the employer sought to enjoin officials of the National Labor Relations Board from holding hearings on the ground that the business was not covered by the National Labor Relations Act. This Court held that the injunction could not be issued. It pointed out that the exclusive "power 'to prevent any person from engaging in any unfair practice affecting commerce' . . . [had] been vested by Congress in the Board," 303 U. S. at 48, and concluded that to grant the injunction would violate the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Under this

which this country is committed' to secure the service of at least 2,000,000 tons of merchant shipping. Pursuant to this direction, the Commission negotiated with the vessel owners. The vessels were made available, a charter party was signed with the British Ministry of War Transport for technical reasons but the commission agreed to pay the vessel owner the agreed compensation for the use of the vessel. This arrangement was evidenced by correspondence between the Commission and the vessel owner.

"There appears to have been mutuality of understanding among all the parties interested, legality of consideration and definit'ness [sic] as to terms, time of performance and acceptance. Payment was made in due course as agreed and this payment constitutes a part of the cost of the war to the people of the United States."

rule the District Court here too lacked power to grant an injunction.

Just as in the *Myers* case, the claim here is that the contracts are not covered by the applicable statute. And the applicable statute, the Renegotiation Act, like the National Labor Relations Act in the *Myers* case, empowers administrative bodies to rule on the question of coverage. The Renegotiation Act authorizes the Chairman of the Maritime Commission to conduct investigations in the first instance to determine whether excessive profits had been made on contracts with the Commission. A contractor aggrieved by the Chairman's determination of excessive profits may have them redetermined in a "de novo" proceeding before the Tax Court. Section 403 (e) (1) of the Act provides that the Tax Court "shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits . . ." Contrary to respondent's contention that this language limits the Tax Court's jurisdiction so as not to include the power to decide questions of coverage, we think the language shows that the Tax Court has such power. For a decision as to what are and are not negotiable contracts is an essential part in determining the amount of a contractor's excessive profits. The legislative history of the Renegotiation Act, moreover, shows that Congress intended the Tax Court to have exclusive jurisdiction to decide questions of fact and law,[3] which latter include the issue raised here of whether the contracts in question are subject to the Act. In order to grant the injunction sought the District Court would have to decide this issue in the first instance. Whether it ever can do so or not, it cannot now decide questions of coverage when the administrative agencies authorized to do so have not yet made their determination. Here, just

---

[3] One of the sponsors of the Renegotiation Act in the House explained the Bill as providing that the Tax Court could make decisions on all "questions of fact and law . . ." 90 Cong. Rec. 1355.

as in the *Myers* case, the administrative process, far from being exhausted, had hardly begun. The District Court consequently was correct in holding that it lacked jurisdiction to act.[4]

Respondent urges several grounds for not applying the rule of the *Myers* case here. It points out that wilful failure to comply with the Adjustment Board's request for information would subject it to penalties under the Act; that the Chairman of the Commission and the Tax Court can enforce their orders without court enforcement proceedings; that the Act specifically provides that the Tax Court's determination is not subject to court review; and that, even if respondent could, subsequent to a Tax Court determination, have resort to the courts, it would be subjected to a multiplicity of suits in order to recover the money due on the contracts. Even if one or all of these things might possibly occur in the future, that possibility does not affect the application of the rule requiring exhaustion of administrative remedies. The District Court had no power to determine in this proceeding and at this time issues that might arise because of these future contingencies. Its judgment dismissing the complaint was correct. The judgment of the Circuit Court of Appeals is

*Reversed.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[4] The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment. *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 299; *Coffman* v. *Breeze Corporations,* 323 U. S. 316; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450; *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491, 494, 499.