**Charles McDEVITT**

v.

**Donald C. GUNN, Howard T. Long and William A. Mayberry.**

**Civ. A. No. 26174.**

United States District Court
E. D. Pennsylvania.

April 1, 1960.

Miles Warner, Philadelphia, for plaintiff.

Walter E. Alessandroni, U. S. Atty., Richard Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

LORD, District Judge.

Plaintiff commenced this action to enjoin defendants from conducting a hearing to determine whether the master's license issued to plaintiff by the United States Coast Guard should be revoked or suspended. Plaintiff has filed a motion for preliminary injunction and defendants have filed a motion for summary judgment supported by the affidavit of Howard T. Long, one of the defendants.

The defendants are respectively an Officer in Charge of Marine Inspection, a Coast Guard Hearing Examiner, and a Coast Guard Investigating Officer.

Plaintiff holds a license, issued by the Commandant of the Coast Guard, certifying that plaintiff is qualified to act as master on steam towing vessels of 300 gross tons or less navigating on rivers and as first-class pilot on all vessels navigating on the Schuylkill River and certain portions of the Delaware River.

On January 23, 1959, defendant Mayberry, an Investigating Officer of the Coast Guard, served on the plaintiff a notice charging that plaintiff, "while acting as Master on board a merchant vessel of the United States, the M. V. Atlantic No. 5, under authority of your

duly issued License, did on or about 3 December, 1958, wrongfully navigate your vessel into collision with the properly anchored Jet Probing Barge No. 1 outside the main ship channel off Delanco, New Jersey".

A hearing was held on March 19, 1959 before the hearing examiner. At the commencement of the hearing, plaintiff's attorney objected to the proceedings on the ground that there was no jurisdiction for the hearing panel to proceed. His contention is that at the time of the collision, plaintiff was not required to have a license and, consequently, was not acting under the authority of the license issued to him by the Commandant of the Coast Guard. The only evidence presented at the hearing was evidence relating to the jurisdictional issue raised by plaintiff's attorney. Neither the Coast Guard nor the plaintiff introduced any evidence relating to the collision, or to plaintiff's alleged negligence, or to any matter other than the issue whether plaintiff was acting under the authority of his license. No decision on the jurisdictional question raised by plaintiff has been made. No further hearings have been had pending decision on the present motions.

█ Plaintiff's action is premature. It is clear that plaintiff has not availed himself of the opportunity to defend against the Coast Guard hearing, to call, examine and cross-examine witnesses, to present oral and written argument, to present proposed findings of fact and conclusions of law, and, in the event of an adverse decision, to appeal the decision to the Commandant of the Coast Guard.

█ It is a long established rule that no one is entitled to judicial relief from a supposed or threatened injury of an administrative body before he has exhausted the available administrative remedies. Aircraft & Diesel Equipment Corp. v. Hirsch, 1946, 331 U.S. 752, 767, 67 S.Ct. 1493, 91 L.Ed. 1796; Macauley v. Waterman S.S. Corp., 1945, 327 U.S. 540, 543, 66 S.Ct. 712, 90 L.Ed. 839; Myers v. Bethlehem Shipbuilding Corp., 1937, 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638; Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, 1911, 222 U.S. 380, 394, 32 S.Ct. 152, 56 L.Ed. 240; Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works, 1898, 172 U.S. 32, 44–45, 19 S.Ct. 90, 43 L.Ed. 354.

The reason for such a rule in cases in which the court is asked to restrain acts of government officers, undertaken in the course of official duty, is self-evident. It avoids needless litigation of speculative or imagined injury. For, until the administrative body has taken final action and issued its final order, the courts cannot predict whether the final order will result in injury to the complaining party.

The plaintiff's main position is that the defendants have no jurisdiction to proceed since the misconduct here alleged is not misconduct "committed by the officer while acting under the authority of his license." He claims that at the time he was piloting the tug it was not required that he have a license.

The Act provides (46 U.S.C.A. § 239) in part:

"(b) The Commandant of the Coast Guard shall establish rules and regulations for the investigation of marine casualties and accidents not involving loss of life, any act in violation of any of the provisions of title 52 of the Revised Statutes or of any of the regulations issued thereunder, and all cases of acts of incompetency or misconduct committed by any licensed officer or holder of a certificate of service while acting under the authority of his license or certificate of service, whether or not any of such acts are committed in connection with any marine casualty or accident. * * "

█ It is well established that an administrative body has the power and the duty to determine its own jurisdiction, and that the person attacking the jurisdiction cannot obtain a judicial de-

termination of the question before he has exhausted the available administrative procedures. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638; Macauley v. Waterman S.S. Corp., 1945, 327 U.S. 540, 543, 66 S.Ct. 712, 90 L.Ed. 839; Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works, 1898, 172 U.S. 32, 44–45, 19 S.Ct. 90, 43 L.Ed. 354; White v. Johnson, 1930, 282 U.S. 367, 374, 51 S.Ct. 115, 75 L.Ed. 388; Camp v. Herzog, 1951, 88 U.S.App.D.C. 373, 190 F.2d 605, 606.

In the Myers case, an employer sought to enjoin the National Labor Relations Board from holding a hearing upon a complaint of unfair labor practices. The employer charged that the Board was without jurisdiction to hold the hearings. In ordering dismissal of the employer's complaint, the Supreme Court held that the Board had the right to determine its own jurisdiction and that the suit was barred because of the failure to exhaust the prescribed administrative remedy. The Court said (303 U.S. at pages 50–51, 58 S.Ct. at page 463):

> "The corporation contends that, since it denies that interstate or foreign commerce is involved and claims that a hearing would subject it to irreparable damage, rights guaranteed by the Federal Constitution will be denied unless it be held that the District Court has jurisdiction to enjoin the holding of a hearing by the Board. So to hold would, as the Government insists, in effect substitute the District Court for the Board as a tribunal to hear and determine what Congress declared the Board exclusively should hear and determine in the first instance. The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the ad-

ministrative body lacked power over the subject matter."

A factual situation strikingly similar to that in this case was presented in Camp v. Herzog, 1951, 88 U.S.App.D.C. 373, 190 F.2d 605. In the Camp case, an attorney sought to enjoin the National Labor Relations Board from proceeding with a hearing to determine whether disbarment or other disciplinary action should be taken against him. In seeking judicial relief, the attorney contended that the Board was without authority to conduct the proceedings. In denying the attorney relief, the court held that the Board had the right to determine its own jurisdiction and that there was no reason shown for relaxing the rule requiring the exhaustion of administrative remedies before judicial aid may be sought. The Court said (at page 606 of 190 F.2d):

> "We agree with the court below that this suit must fail. Whether the Board inherently possesses the requisite authority to discipline those who practice before it or possesses such authority as a necessary incident to the powers conferred upon it by its governing statute is a question which should be answered by the Board in the first instance. If given such an opportunity, it may resolve this as well as the other procedural issues in appellant's favor. And even if they should be decided against him, the Board may conclude on the merits to take no disciplinary action. In either event, judicial relief may ultimately prove unnecessary. We do not think that, under the circumstances of this case, the nature of the injury alleged by appellant warrants relaxation of the rule that administrative remedies must be exhausted before judicial relief may be sought."

■ Not only did plaintiff have a license issued by the Commandant, but he also was required by law to have such a license. Section 405 of Title 46 United States Code Annotated, requires that any person serving as master of a tug

be licensed by the United States Coast Guard. That statute provides:

"The hull and boiler of every tugboat, towing boat, and freight boat shall be inspected, under the provisions of title 52 [Sections 4399–4500] of the Revised Statutes; and the Coast Guard shall see that the boilers, machinery, and appurtenances of such vessel are not dangerous in form or workmanship, and that the safety valves, gauge cocks, low-water alarm indicators, steam gauges, and fusible plugs are all attached in conformity to law; and the officers navigating such vessels shall be licensed in conformity with the provisions of sections 214, 224, 226, and 228, 229, and 230 of this title and shall be subject to the same provisions of law as officers navigating passenger steamers. [Revised Statutes, § 4427.]."

The statute in clear and unambiguous language applies to every officer of every tugboat, towing boat and freight boat. The statute admits no exceptions.

Moreover, Sections 222 and 224 of Title 46 likewise require that the tug Atlantic No. 5 carry a complement of licensed officers. Those statutes provide in part that:

"§ 222. *Complement of officers and crew of vessels; penalties.*

"No vessel of the United States subject to the provisions of title 52 of the Revised Statutes or to the inspection laws of the United States shall be navigated unless she shall have in her service and on board such complement of licensed officers and crew including certificated lifeboat men, separately stated, as may in the judgment of the Coast Guard be necessary for her safe navigation. * * * [Revised Statutes, § 4463, as amended.]"

"§ 224. *Licensing of officers.*

"The Coast Guard shall license and classify the masters, chief mates, and second and third mates, if in charge of a watch, engineers, and pilots of all steam vessels, and the masters of sail vessels of over seven hundred gross tons, and all other vessels of over one hundred gross tons carrying passengers for hire. * * * [Revised Statutes, § 4438, as amended.]"

As noted supra, the provisions of 46 U.S.C.A. §§ 222 and 224 are expressly made applicable to the officers of every tugboat and every towing boat. 46 U.S.C.A. § 405.

Plaintiff apparently contends that the Tug Atlantic No. 5 is a diesel-powered vessel and therefore is not subject to the same laws as are steam-powered vessels. A mere reading of Sections 405, 222, and 224 of Title 46 (quoted in part, supra) is sufficient answer to that contention. Those statutes require every tug to be inspected and require her officers to be licensed by the Coast Guard.

The courts repeatedly have held that the power to grant a preliminary injunction is "a very far reaching power, never to be indulged in except in a case clearly demanding it." Murray Hill Restaurant v. Thirteen Twenty One Locust, 3 Cir., 1938, 98 F.2d 578, 579.

In the absence of a showing that the moving party will suffer certain, grave and irreparable injury during the pendency of the action brought for permanent injunction, the granting of a preliminary injunction is not warranted. See Ohio Oil Co. v. Conway, 1928, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972; Yakus v. United States, 1944, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834; Sims v. Greene, 3 Cir., 1947, 161 F.2d 87, 89; Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 1953, 206 F.2d 738, 743.

Plaintiff further claims the hearing would cause plaintiff irreparable harm. This can hardly be argued until, at least, the result of the hearing is ascertained.

It is well settled that a court of equity will not enjoin the mere holding of an administrative hearing. It is evident that if the mere holding of an administrative hearing were in itself re-

garded as constituting irreparable injury, the requirement that administrative remedies must be exhausted before seeking judicial relief would be rendered nugatory. As the Supreme Court said in Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638:

"Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact."

For the foregoing reasons, the plaintiff's motion for preliminary injunction is denied and defendants' motion for summary judgment is granted.