## LOUISIANA POWER & LIGHT COMPANY

v.

## UNITED GAS PIPE LINE COMPANY and Pennzoil United, Inc.

### Civ. A. No. 16637.

United States District Court,
W. D. Louisiana,
Monroe Division.
June 25, 1971.

---

Thomas W. Leigh, Theus, Grisham, Davis & Leigh, Monroe, La., Andrew P. Carter, Monroe & Lemann, New Orleans, La., for plaintiff.

John T. Guyton, Shreveport, La., William R. Choate, Baker & Botts, Houston, Tex., for defendants.

NAUMAN S. SCOTT, District Judge:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an injunctive proceeding brought by Louisiana Power and Light Company (LPL) against defendants United Gas Pipe Line Company (United) and Pennzoil United, Inc. (Pennzoil) to restrain and enjoin the defendants from curtailing the supply of gas to plaintiff's Sterlington and Nine Mile Point generating stations in Louisiana and ordering defendants to deliver natural gas to plaintiff in accordance with the provisions of the current contracts between LPL and United.

LPL is a Florida corporation having its principal place of business in the State of Louisiana and is a "public utility" within the meaning of the Federal Power Act, 16 U.S.C. § 791a et seq. and is the owner and operator of the Sterlington and Nine Mile Point electric generating plants previously mentioned.

Pennzoil and its wholly-owned subsidiary, United, are Delaware corporations having their principal place of business

in the State of Texas. United is engaged in the transmission of natural gas through transmission lines located in states including Louisiana, Texas and Mississippi and also delivers to interstate pipe line companies for resale. United has been furnishing natural gas to LPL at both the Nine Mile Point Station and the Sterlington Station under contract for many years.

## JURISDICTION

LPL asserts that this Court has jurisdiction under 28 U.S.C. § 1332 because this is a civil action in which the matter in controversy exceeds the sum or value of $10,000.00, and is between citizens of different states.

## THE ISSUE

Pennzoil, United and the Intervenor, Federal Power Commission (FPC) dispute this Court's jurisdiction and have filed motions to dismiss on the contention that this matter involves a proceeding (curtailment of natural gas) which is presently before the FPC, that LPL is an active participant and a party to these proceedings before the Commission, and that the FPC has exclusive jurisdiction under Sections 4(b), 5(a), and 16 of the Natural Gas Act [15 U.S.C. §§ 717c, 717d, and 717o].

## FINDINGS OF FACT

1. United has supplied gas to LPL's Sterlington Station under contracts which include a provision entitled "Impairment of Deliveries" as follows:

"In the event a shortage of gas renders Seller unable to supply the full gas requirements of all its consumers, then it is mutually agreed that the gas requirements of gas utilities selling gas to domestic consumers and public utility power plants using gas for generation of electricity which is sold to domestic consumers shall first be supplied by Seller, and the remaining available gas shall be prorated by Seller among its other consumers."

2. United has supplied gas to LPL's Nine Mile Point Station under contracts containing provisions entitled "Impairment of Deliveries" as follows:

"Buyer specifically recognizes the fact that Seller delivers gas to gas utilities for resale to domestic consumers and to other industrial consumers. In the event a shortage of gas renders Seller unable to supply the full gas requirements of all its consumers then it is mutually agreed that the gas requirements of gas utilities selling gas to domestic consumers shall first be supplied by Seller and next the gas requirements of public utility power plants (including plant of Buyer) using gas for generation of electricity which is sold to domestic consumers, shall be supplied, and if Seller does not have sufficient gas to supply all of the requirements of said power plants, then said requirements shall be supplied ratably. The remaining available gas supply shall be prorated by Seller among its other consumers."

3. It is conceded that LPL is an industrial consumer and utilizes the gas delivered to it to generate the electric power at its Sterlington and Nine Mile Point Stations and not for the purpose of resale.

4. All gas delivered by United to the Sterlington and Nine Mile Point Stations is produced in Louisiana. All deliveries of gas to the Sterlington Station are interstate gas. Deliveries of gas to the Nine Mile Station are made through the "Green" pipe line which is located entirely within the State of Louisiana. The great bulk of the gas in the "Green" line is intrastate gas. However, some gas is dumped into the "Green" pipe line from the "Black" pipe line. This is interstate gas so there is a co-mingling of intrastate and interstate gas in the "Green" pipe line. An application is presently pending before the Federal Power Commission (RP71–89) to certify the "Green" pipe line.

5. United filed with the FPC on October 26, 1970 a petition for a declaratory order to curtail gas deliveries during the winter months (November 1 to April 1) on a ratable basis and in the

following order: (1) gas used for industrial purposes, including gas used to generate electricity which in turn is applied to industrial uses, (2) gas used to generate electricity which is consumed by domestic customers, and (3) gas used by domestic consumers. United alleged that the curtailment was made necessary because the gas supply was insufficient to meet its contract requirements. Attached to the petition are exhibits including exhibits showing the United customers affected by the proposed curtailment, as follows:

JACKSON AREA

| | |
|---|---|
| Industrials | 6 customers |
| Power Plants | 4 customers |
| Pipelines | 2 customers |
| City Gates | 1 customer |

MOBILE-PENSACOLA AREA

| | |
|---|---|
| Industrials | 17 customers |
| Power Plants | 2 customers |
| City Gates | 3 customers |

SHREVEPORT AREA

| | |
|---|---|
| Industrials | 5 customers |
| Power Plants | 1 customer |
| Pipelines | 6 customers |
| City Gates | 2 customers |

NEW ORLEANS AREA

| | |
|---|---|
| Industrials | 4 customers |
| Power Plants | 3 customers |
| City Gates | 2 customers |

LAFAYETTE AREA

| | |
|---|---|
| Industrials | 2 customers |
| Power Plants | 1 customer |

These are the parties (customers) affected by the FPC proceeding RP71–29 who are not parties to this suit.

6. LPL filed its petition to intervene in RP71–29 on November 25, 1970 stating the "impairment of deliveries" articles of its contracts with United. It also stated its proposed curtailment violated these contracts; that the FPC did not have jurisdiction over United's sales to LPL because they constitute "direct sales" which are exempt under Section 1(b) of the Natural Gas Act and requests to participate in the hearing without waiving these objections. (FPC Exhibit 3, Item 5.)

7. The FPC approved United's curtailment program for the 1970–71 winter season by order in FPC Docket No. RP71–29 dated December 29, 1970 (FPC Exhibit 3, Item 7). This order was issued as a result of the settlement between the parties, including LPL.

8. United filed a supplemental petition in RP71–29 on February 22, 1971 for the extension of its curtailment program from April 1, 1971 through October 31, 1971 (FPC Exhibit 3, Item 3). The record does not disclose the number or identity of intervenors, including LPL, who intervened prior to November 25, 1970 in RP71–29, however, an order was issued March 10, 1971 permitting the intervention by Aluminum Company of America, Boise Southern Company, Container Corporation of America, Marquette Cement Manufacturing Company, National Gypsum Company, New Jersey Natural Gas Company, Scott Paper Company, Transcontinental Gas Pipeline Corporation and United Gas, Inc., and on April 12, 1971 an order issued permitting the intervention of the City of Pensacola, Florida, et al, Clarke-Mobile Counties Gas District, General Services Administration, Northern Illinois Gas Company and Mississippi Public Service Commission (FPC Exhibit 3, Items 9 & 10).

9. LPL has not denied United's assertion that its supply of gas is inadequate to meet its present and impending gas delivery commitments. It has, in fact, agreed to the curtailment approved in the order of December 29, referred to in Finding 7 above. The fact that the Natural Gas Transmission Industry has recently experienced a decline in the ratio of crude natural gas reserves to annual volume of consumption caused in part by the increasing demand for natural gas by customers and the declining rate of additions to the natural gas reserves has been judicially noticed by

the Fifth Circuit, Southern Louisiana Area Rate Cases v. Federal Power Comm'n., 428 F.2d 407 (5th Cir.), Cert. denied Associated Gas Distributors v. Austral Oil Co., 400 U.S. 950, 91 S.Ct. 244, 27 L.Ed.2d 257 (1970).

10. FPC Order No. 431 directed interstate pipe lines, including United, to take steps, including filling storage fields, in order to insure capacities to meet the heating season demands for the winter of 1971–72 (November 1, 1971 to March 31, 1972). The Order further directed the pipe lines to file plans within thirty days indicating the way in which the pipe lines proposed to meet the winter heating·season demands. United filed its response on May 17, 1971; the Commission docketed the response under FPC Docket No. RP71–120 and then on May 28, 1971 order Docket No. RP71–120 consolidated for hearing and decision with ·Docket No. RP71–29. That order provided that persons who are parties to the proceeding in Docket No. RP71–29 will be deemed to be parties in the consolidation and need not file to intervene in Docket No. RP71–120.

11. LPL has alleged (Complaint Paragraph 17) that the proposed curtailment by United could ultimately effect a "black-out" or "brown-out" which, under certain circumstances, could cover an area as large as the whole State of Louisiana or, indeed, a several-state area such as occurred during the notorious "northeast black-out" in 1965. The record is bare of any evidence to support this allegation.[1] In fact, in a registration statement filed by LPL with the Securities and Exchange Commission on February 19, 1971, the following statement was made:

"FUEL SUPPLY. The Company's primary fuel is natural gas. Two of the Company's three major generating stations are outfitted to burn oil as a standby fuel, and the third station is presently being modified to allow the burning of oil as a standby fuel and this modification is scheduled for completion by June 1971. The Company has firm contracts for an adequate supply of gas for all generating capacity which is or will be operational prior to 1974 (3404 MW), which contracts have various expiration dates from 1978 to 1993. During the winter of 1970–71 gas was curtailed to some extent by one supplier who supplies gas to approximate 550 MW of generating capability. After June 1971 the Company expects to be able to offset any foreseeable gas curtailment by burning oil. The supply of fuel for generating units that will become op-

---

[i.] Mr. J. M. Wyatt, Vice President of LPL, testified as follows when cross-examined by Mr. Gooch, representing the FPC: "BY MR. GOOCH:

Q. All right, sir. Now let's look under such things as litigation and regulations in the registration statement filed by the SEC. Mr. Carter has just said that they were not going to assume they would lose any suits. Would you show me anywhere in this registration statement filed in April, where Mr. Carter even disclosed to the public that there was a suit pending which could cause Louisiana Power and Light Company to suffer brown-outs and black-outs if this allegation were true?

A. If I· understand your question, I don't see why it would be necessary to notify, because there was nothing involved here that would cause brown-outs or black-outs on this suit.

Q. Nothing involved in the suit?

A. In the suit that I am looking at here, if I understand your question.

Q. My question is—is the suit that we are here in Court for today, do you see that disclosed anywhere, to the public, that it is pending?

A. No, it is not in here.

Q. All right. Now, would you please look at the date of this certificate?

A. Yes.

Q. Will you tell the Court what this is?

A. May 19, 1971.

Q. Are you aware of the filing with the SEC that would either call to the attention the pendency of this suit to those who may be interested in purchasing Louisiana Power and Light securities or reporting any change in your fuel oil situation subsequent to May 19, 1971?

A. I am not aware of it." (Tr. p. 103).

erational in 1974 and thereafter is being negotiated at this time:" FPC Exhibit 21.

12. On March 31, 1971, LPL, although it was an active participant in the curtailment proceeding before the FPC, filed its complaint in this Court, seeking to enjoin United's curtailment program insofar as it affected LPL's Sterlington and Nine Mile Point Stations. The trial Court, after considering the pleadings of LPL and the briefs and arguments of its counsel granted a Temporary Restraining Order on April 27, 1971.

13. On April 28, 1971, the FPC intervened and filed a Motion to Dismiss for lack of subject matter jurisdiction. United-Pennzoil, on April 29, 1971, filed its Motion to Dismiss.

14. The Court considering the additional pleadings then before it, dissolved the temporary restraining order on April 29, 1971 and dismissed the case for lack of jurisdiction. LPL filed a Notice of Appeal and moved for a stay order which the Court refused. The matter is now before this Court on an Order of the Fifth Circuit Court of Appeals dated May 14, 1971 vacating the trial Court's judgment of dismissal and remanding the case to the District Court for an expedited hearing on the jurisdictional issue and such other preliminary issues as might be properly raised.

15. The original trial judge having recused himself, the matter was assigned to this Court for hearing and a full evidentiary hearing was conducted on May 27, 1971.

## CONCLUSIONS OF LAW

LPL seeks an injunction restraining and enjoining United and Pennzoil from curtailing the supply of gas to the Sterlington and Nine Mile Point generating stations of LPL in breach of United's contracts with LPL, and ordering said companies to deliver natural gas to LPL in accordance with the provisions of said contracts.

■■ LPL is not entitled to injunctive relief unless it clearly establishes that it is threatened with irreparable injury. It alleges that its Sterlington Station has no alternative source of energy (Complaint Paragraph 17) and that the implementation of the curtailment might result in an extensive "Brown-out" or "Black-out" (Complaint Paragraph 16). LPL has failed to establish irreparable injury (Findings of Fact No. 11) and therefore is not entitled to injunctive relief. However, the Court does not choose to rest judgment solely on these grounds, since the Court of Appeals has directed that a specific finding should be made on the jurisdictional issue.

LPL forcefully contends that this Court has primary jurisdiction and that the FPC lacks jurisdiction because (1) the gas delivered to the Nine Mile Point Station is "intrastate gas" not subject to the jurisdiction of the FPC and (2) direct sales such as the sales from United to LPL are exempt from the jurisdiction of the Commission under the provisions of Section 1(b) of the Natural Gas Act (15 U.S.C. § 717).

■ It is not clearly established by the record that the gas delivered to the Nine Mile Point Station is "intrastate gas", since some "interstate gas" is dumped into the system which supplies the Nine Mile Point Station (Findings of Fact No. 4). The determination of this question is within the fundamental jurisdiction of the FPC, requires the expertise of that agency and is presently pending before that agency in Docket No. RP71–89. The same problems were properly disposed of in the Florida Parishes cases, In the Matter of United Gas Pipe Line Company, Docket No. CP62–161, 30 FPC 560, affirmed on appeal, sub nom., Louisiana Public Service Commission et al. v. Federal Power Commission et al., 359 F.2d 525, cert. denied, 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68.

■ LPL's second contention is predicated on a finding that the question at issue is the violation of provisions of its

direct sales contract with United. However, United's application to the FPC in RP71–29 is couched in terms of the curtailment proceeding (FPC Exhibit 3, Item 1). The exhibits and testimony pertain to volumes of gas—supply and delivery. It seems fairly obvious that if the Court required delivery of the full gas contract commitment to LPL, the gas supply available to United's other customers would be reduced and the curtailment of gas supply to other customers would be proportionately affected. Thus all of United's customers have an interest, including more than 50 intervenors in RP71–29. A cursory examination of the testimony and the exhibits produced at the hearing before this Court on May 27 will demonstrate the complexities and the technical nature of the matters involved in United's application and the special expertise required to resolve it. This is a curtailment proceeding. The proposed curtailment program certainly affects deliveries to United's customers under direct sales contracts such as LPL. However, this is a collateral effect of the curtailment and does not necessarily convert it into an attempt by the FPC to exert jurisdiction over such direct sales contracts.

The threatened irreparable injury alleged by LPL (possible "brown-out" or "black-out") is related solely to the volume of gas delivered. There is no proof that LPL actually requires its full contract commitment of gas to avoid this consequence. It received less than contract commitments during the winter months of 1970–71 without experiencing such injury. This Court cannot assume, especially in an injunction proceeding, that the full contract commitment of gas is required by LPL to avoid its alleged injury. The injunction could not be granted if standby fuel, as alleged by defendants, is available. The contracts are strictly collateral to the issue before the Court.

United, Pennzoil and the FPC urge that LPL is not entitled to judicial relief until it has exhausted its administrative remedies in the FPC. The Courts have not uniformly followed this precept. Professor Davis, in his Administrative Law Treatise, Volume 3, Section 20.03, Page 69, suggests factors which should be considered in determining whether this precept should be followed:

"The key factors are three: extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction. Unfortunately, each of these three key factors is a variable, and each often calls for a considerable amount of judgment for its proper appraisal.

A workable standard probably should not go beyond a statement that each of these three factors should be weighed in determining whether or not a court should decide an issue of administrative jurisdiction without requiring exhaustion of administrative remedies. A neat word formula probably is not feasible."

As noted above, LPL has made no attempt to establish the minimum volume of gas which is required to maintain its service, or that the amount allocated to it under the curtailment program is insufficient to meet its minimum requirements. The contracts are hardly pertinent to these issues. The Court finds that LPL has not proved the extent of possible injury which might result from pursuit of the administrative remedy, that the curtailment proceedings are well within the jurisdiction of the FPC and that the expertise of the FPC is necessary for the proper consideration and disposition of the issues presented in this proceeding. LPL must exhaust its administrative remedies despite its assertion that the FPC lacks jurisdiction. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Federal Power Commission v. Arkansas Power & Light Co., 330 U.S. 802, 67 S. Ct. 963, 91 L.Ed. 1261, rev'g 156 F.2d 821; Union Oil Co. of California v. Fed-

eral Power Commission, 236 F.2d 816 (5th Cir. 1956), Cert. denied, 352 U.S. 696, 77 S.Ct. 360, 1 L.Ed. 323; and Lone Star Cement Corp. v. Federal Trade Commission, 9 Cir., 339 F.2d 505. The FPC is competent to decide its jurisdiction and should do so. City of Hastings, Nebraska v. Federal Power Commission, 95 U.S.App.D.C. 158, 221 F.2d 31; Marine Engineers Beneficial Ass'n v. Interlake S. S. Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418.

The motions of United, Pennzoil and the FPC to dissolve the temporary restraining order and to dismiss this suit are granted and the temporary restraining order heretofore issued on April 27, 1971 is dissolved.

Counsel for defendants United and Pennzoil and for Intervenor FPC immediately shall prepare a proper decree and obtain approval thereof from counsel for plaintiff LPL in accordance with Rule 9 of this Court and present such judgment for signature as expeditiously as possible.