PLEASANT BROADCASTING
COMPANY, Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee.

PLEASANT BROADCASTING
COMPANY, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.

WIYN RADIO, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.

Nos. 76–1511, 76–1593 and 75–2121.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 23, 1977.

Decided Aug. 1, 1977.

---

**46.** Transportation Act of 1940, Pub.L. No. 76–785, § 201, 54 Stat. 932, *as codified*, 49 U.S.C. § 903(e)(2) (1970) (emphasis added).

Lauren A. Colby, Washington, D. C., for appellant in No. 76–1511 and petitioner in No. 76–1593.

Raymond L. Strassburger, Counsel, F. C. C., Washington, D. C., with whom Werner K. Hartenberger, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Stephen A. Sharp, Counsel, F. C. C., Carl R. Lawson and Joen Grant, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellee in No. 76–1511 and respondent in No. 76–1593.

Morton L. Berfield, Washington, D. C., with whom Lewis I. Cohen, Washington, D. C., was on the brief, for petitioner.

Stephen A. Sharp, Counsel, F. C. C., Washington, D. C., with whom Werner K. Hartenberger, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., Barry Grossman and Carl Lawson, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents.

Ashton R. Hardy, Gen. Counsel, F. C. C., Washington, D. C., at the time the record was filed, also entered an appearance for Federal Communications Commission.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

These cases, although argued separately, raise the same threshold issue: whether the court of appeals has jurisdiction to entertain petitions for review of Federal Communications Commission orders imposing monetary forfeitures on broadcast licensees. By an order entered today, the cases have been consolidated for decision. On the basis of the reasons set forth below, we hold that section 504 of the Communications Act of 1934, *as amended,* 47 U.S.C. § 504 (1970), vests exclusive jurisdiction in the district courts to review, in the first instance, licensee challenges to forfeiture orders, and accordingly dismisses the petitions for review filed herein.

I

Section 503(b) of the Communications Act, 47 U.S.C. § 503(b) (1970), added by the Communications Act Amendments of 1960, Pub.L. 86–752, § 7(a), 74 Stat. 894–95, provides the FCC with authority to assess forfeitures of up to $1,000 per violation against any broadcast licensee who "willfully or repeatedly fails to observe any of the provisions of [the Communications] Act or of any rule or regulation of the Commission prescribed under authority of [the] Act. . ." 47 U.S.C. § 503(b)(1)(B). Assessment of a forfeiture must be preceded by written "notice of apparent liability," setting forth the nature of the alleged violation, and by an opportunity for the licensee to show in writing why he should not be held liable. 47 U.S.C. § 503(b)(2).[1]

---

1. Section 503(b) provides in full:

    (b)(1) Any licensee or permittee of a broadcast station who—

    (a) willfully or repeatedly fails to operate such station substantially as set forth in his license or permit,

    (B) willfully or repeatedly fails to observe any of the provisions of this chapter or of

Under section 504(a) of the Act, forfeitures imposed by the Commission are recoverable, absent voluntary payment, only in civil proceedings brought by United States Attorneys in the district courts. *See* 47 U.S.C. § 504(a) (1970). *See also* 28 U.S.C. § 1355 (1970). The 1960 Amendments, while expanding the Commission's powers through enactment of section 503(b), inserted language into section 504(a) specifying that in such suits for recovery the Commission's findings and conclusions shall be subject to trial *de novo*. Communications Act Amendments of 1960, *supra*, § 7(b), 74 Stat. 895.[2] The Amendments also added a new subsection to section 504 providing that "[i]n any case where the Commission issues a notice of apparent liability looking toward the imposition of a forfeiture . . .," that fact shall not be used, in any other proceeding before the Commission, to the prejudice of the person to whom such notice was issued, unless (i) the forfeiture has been paid, or (ii) a court of competent jurisdiction has ordered payment of such forfeiture, and such order has become final." *Id.*,

§ 7(d), *now codified at* 47 U.S.C. § 504(c) (1970).

Petitioners in the instant cases are two broadcast licensees who are requesting that the respective forfeiture orders entered against them by the Commission under section 503(b) be set aside. As of this date, the forfeitures in question have neither been paid nor made the subject of collection proceedings in the district court. Each petitioner seeks review in this court on the basis of the administrative record compiled before the Commission; and each has represented that, if we uphold the order against it, it will pay the forfeiture without pressing its right to a trial *de novo* in the district court under section 504.

In Nos. 76–1511, 76–1593, *Pleasant Broadcasting Co. v. FCC*, the Commission imposed a $500 forfeiture on Pleasant Broadcasting Co. for "repeatedly violating a Commission rule requiring that the operat-

---

any rule or regulation of the Commission prescribed under authority of this chapter or under authority of any treaty ratified by the United States,

(C) fails to observe any final cease and desist order issued by the Commission,

(D) violates section 317(c) or section 509(a)(4) of this title, or

(E) violates section 1304, 1343, or 1464 of Title 18, shall forfeit to the United States a sum not to exceed $1,000. Each day during which such violation occurs shall constitute a separate offense. Such forfeiture shall be in addition to any other penalty provided by this chapter.

(2) No forfeiture liability under paragraph (1) of this subsection (b) shall attach unless a written notice of apparent liability shall have been issued by the Commission and such notice has been received by the licensee or permittee or the Commission shall have sent such notice by registered or certified mail to the last known address of the licensee or permittee. A licensee or permittee so notified shall be granted an opportunity to show in writing, within such reasonable period as the Commission shall by regulations prescribe, why he should not be held liable. A notice issued under this paragraph shall not be valid unless its sets forth the date, facts, and nature of the act or omission with which the licensee or permittee is charged and specifically identifies the particular provision or

provisions of the law, rule, or regulation or the license, permit, or cease and desist order involved.

(3) No forfeiture liability under paragraph (1) of this subsection (b) shall attach for any violation occurring more than one year prior to the date of issuance of the notice of apparent liability and in no event shall the forfeiture imposed for the acts or omissions set forth in any notice of apparent liability exceed $10,000.

2. As amended, section 504(a) provides in relevant part:

(a) The forfeitures provided for in this chapter shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States brought in the district where the person or carrier has its principal operating office or in any district through which the line or system of the carrier runs; *Provided*, That any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo . . . .. Such forfeitures shall be in addition to any other general or specific penalties provided in this chapter. It shall be the duty of the various United States attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures under this chapter. . . . .

ing power of broadcast stations be maintained at a level not exceeding 105 per cent of the authorized amount. 47 C.F.R. § 73.-267(b)(1). In its response to the notice of apparent liability, Pleasant had conceded the fact of violation, explaining that the over-power operations, asserted by the Commission to have occurred on 26 occasions on twelve separate dates in October 1974, had resulted from Pleasant's use of an erroneous method for measuring output power. Pleasant contended, however, that use of this method stemmed from a misunderstanding of the Commission's rules, and was terminated upon notice from the Commission that Pleasant was operating in violation of those rules. Pleasant argued that, in light of these circumstances, it had engaged only in a single, continuing violation of the over-power regulation, and not a "repeated" violation within the meaning of section 503(d)(1)(B) of the Communications Act.

The Commission's order rejected Pleasant's construction of the Act, citing *Friendly Broadcasting Co.*, 45 FCC 46, 49–50 (1962), for the proposition that "repeatedly" simply means more than once, and does not require deliberate repetition following a warning. Pleasant's sole contention in this court, on the merits, is that the Commission's interpretation of the word "repeatedly" was erroneous as a matter of law. In No. 76–1511, Pleasant advances this contention in the form of a special appeal under section 402(b) of the Act, 47 U.S.C. § 402(b) (1970);[3] and in No. 76–1593, a petition for review under section 402(a) of the Act, 47 U.S.C. § 402(a) (1970), has been filed.[4]

No. 75–2121, *WIYN Radio, Inc. v. FCC*, involves a forfeiture of $1000 assessed against WIYN Radio, Inc. for what the Commission found to be a "repeated" violation of its Personal Attack Rule, 47 C.F.R. § 73.123, a component of the Fairness Doctrine. That Rule provides in relevant part:

(a) When, during the presentation of views on a controversial issue of public importance, an attack is made upon the honesty, character, integrity or like personal qualities of an identified person or group, the licensee shall, within a reasonable time and in no event later than 1 week after the attack, transmit to the person or group attacked (1) notification of the date, time and identification of the broadcast; (2) a script or tape (or an accurate summary if a script or tape is

---

3. Section 402(b) provides:

(b) Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

(1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

(2) By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

(3) By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.

(4) By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

(5) By the holder of any construction permit or station license which has been modified or revoked by the Commission.

(6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1)–(4) of this subsection.

(7) By any person upon whom an order to cease and desist has been served under section 312 of this title.

(8) By any radio operator whose license has been suspended by the Commission.

4. Section 402(a) states:

(a) Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 19A of Title 5.

Chapter 19A of Title 5 has been superseded by 28 U.S.C. § 2341 *et seq.* (1970). 28 U.S.C. § 2342 provides in relevant part:

The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of Title 47;

.　　.　　.　　.　　.

not available) of the attack; and (3) an offer of a reasonable opportunity to respond over the licensee's facilities. *Id.* § 73.123(a).

Following a complaint from the Director of the Institute for American Democracy (IAD), a notice of apparent liability to WIYN, and WIYN's response, the Commission held that remarks made on a program broadcast by WIYN on April 23, 1971 constituted a personal attack on IAD and its newsletter, and were delivered during a discussion of a controversial issue of public importance.[5] Since WIYN did not offer IAD an opportunity to respond to the remarks until twenty-seven days after the broadcast, the Commission concluded that the Personal Attack Rule had been violated; and, on the ground that a separate offense occurred during each of the 20 days WIYN failed to notify IAD and offer it reply time, after the seven-day period specified in the Rule had lapsed, the Commission found that WIYN had engaged in a "repeated" violation within the meaning of the forfeiture statute.

WIYN seeks review in this court under section 402(a) of the Communications Act. In support of its contention that the forfeiture order should be set aside, WIYN asserts that the Commission arbitrarily departed from its own policies and precedents in holding that (1) the remarks in question constituted a personal attack, (2) they occurred during the presentation of a controversial issue of public importance, and (3) assessment of a forfeiture was warranted.

## II

At the outset, we note that Pleasant Broadcasting Co. now concedes that it does not fall within any of the jurisdictional categories enumerated in section 402(b), *see* note 3 *supra,* and accordingly we dismiss the appeal in No. 76–1511 which is grounded in that statute. The question remaining for decision is whether the petitions for review under section 402(a) in Nos. 76–1593 and 75–2121 are barred by the provisions of section 504. Notwithstanding the rather open-ended language of section 402(a), *see* note 4 *supra,* we conclude that section 504 establishes the district court as the exclusive forum for review of forfeiture orders in the first instance.

Although section 504(a) by its terms makes no provision for *initiation* of judicial review by persons subjected to forfeiture orders, *but see* p. 502 *infra,* it clearly provides such persons with an opportunity to obtain full review of the Commission's findings, in a trial *de novo* in the district court, in the proceeding which the Government must bring if it wishes to collect the fine. And section 504(c) prevents the existence of a notice of liability or an order of forfeiture from being used against a broadcast licensee in other Commission proceedings, unless the forfeiture has been paid or a court order requiring payment has become final. *See* S.Rep.No. 1857, 86th Cong., 2d Sess. 11 (1960).

As we recently had occasion to observe, "an impressive line of authority supports the . . . proposition that, even where Congress has not expressly con-

---

**5.** The Commission's decision is reported at 35 FCC 2d 175 (1972). Subsequent opinions by the Commission denied WIYN's application for remission or reduction of the forfeiture, 52 FCC 2d 722 (1975), and WIYN's petition for reconsideration, 56 FCC 2d 272 (1975).

The controverted remarks were made by the moderator of a talk program, in response to a telephone call from a listener, and included the following:

 . . . That is precisely the theory behind the Communist strategy of infiltration. The Communist cell is eventually to become the whole body. The dominant force in the organizations institutions [sic] infiltrate. So

there you have it. You have the organization, you have its head, and you have its paper. Now who can deny that HOME-FRONT is a publication of a subversive organization and certainly its head is an avowed Communist. And he is bent on infiltrating the Methodist Church in its entirety. And you can't get around the evidence. [W]e could go on and on, but I believe we have proved our point and I think the gentlemen will have to admit that his HOME-FRONT magazine and his IAD are definitely subversive. They are to the Far Left and I don't know what more can be said on that . . . .

ferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." *Investment Company Institute v. Board of Governors*, 179 U.S.App. D.C. 311, 319, 551 F.2d 1270, 1279 (1977); *see, e. g., Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 420–22, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); *Macauley v. Waterman S. S. Corp.*, 327 U.S. 540, 543–45, 66 S.Ct. 712, 90 L.Ed. 839 (1946). And section 10(b) of the Administrative Procedure Act, 5 U.S.C. § 703 (1970), specifies that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute," except where such review is unavailable or inadequate. Thus, absent strong evidence to the contrary in the legislative history, or a showing that the special review mechanism is unavailable or inadequate, we must assume that the mechanism selected by Congress—a trial *de novo* in the district court— is the exclusive means for review of a forfeiture order entered by the Commission.

Certainly it is unlikely that Congress intended for persons in the position of petitioners to have two bites at the apple—that is, to be able to challenge the forfeiture order in a court of appeals on the basis of the administrative record and, if unsuccessful, to litigate all issues *de novo* in the district court, with a right of appeal to the court of appeals. Although petitioners have represented that, if we were to rule against them on the merits, they would pay the fines without forcing a collection pro-

ceeding in the district court, the enforceability of these representations is open to question. To be sure, it might be possible to devise a workable system for guaranteeing that broadcast licensees who choose to come to a court of appeals would be foreclosed from pursuing the matter further in the district court.[6] But, again, we would be reluctant to give litigants a choice of forums for review, without some support in the language or history of the forfeiture statute, or some showing that the special procedure enacted by Congress is unavailable or inadequate. *See Investment Company Institute v. Board of Governors, supra*, 179 U.S.App.D.C. at 319, 321, 551 F.2d at 1278–80.[7]

The legislative history of the 1960 Amendments does not expressly address the question of the exclusivity of district court review of forfeiture orders. Nevertheless, it is fair to say that, rather than supporting a choice of forums for review, the relevant materials indicate that in passing the amendments Congress was operating under the assumption that any review would occur through trial *de novo* in the district court. *See, e. g.,* S.Rep.No. 1857, 86th Cong., 2d Sess. 10 (1960); 106 Cong.Rec. 17622 (1960) (remarks of Senator Pastore). Moreover, the possibility of providing for a review on the basis of the administrative record, following a full administrative hearing by the Commission, was raised in the hearings before the Senate Committee, but was rejected in favor of the approach ultimately enacted into section 504—notice and an opportunity for a written response be-

---

6. For example, petitioners could be required, as a precondition of filing a petition for review, to pay the amount of the proposed forfeiture into the registry of the court of appeals, with the stipulation that the court would return the money in the event of a successful challenge to the Commission's order, but pay the sum over to the United States Treasury if the order is upheld. This system would have the advantage of eliminating the "double-layer" of review in cases in which the person subjected to the forfeiture order is willing, in effect, to waive his right to a trial *de novo* in the district court. On the other hand, the review function would be split between two courts, with some danger of

forum-shopping and of challenges being brought in the court of appeals in cases in which review cannot in fact take place on the basis of the administrative record. *See generally* Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Colum.L.Rev. 1, 57, 61 (1975).

7. Given our disposition of these cases, we need not decide whether the issues raised by petitioners are indeed reviewable on the basis of the administrative record. *See generally Investment Company Institute v. Board of Governors, supra*, 179 U.S.App.D.C. at 316–19, 551 F.2d at 1275–78.

fore the Commission, followed by *de novo* review in the district court. *Compare Proposed Amendments to FCC Act of 1934: Hearings on S. 1898 Before the Communications Subcomm. of the Senate Comm. on Interstate and Foreign Commerce,* 86th Cong., 2d Sess. 99, 105 (1960) (remarks of Donald C. Beelar and Lawrence Speiser, respectively, suggesting full administrative hearing and review on the basis of the administrative record) *with* S.Rep.No. 1857, *supra,* 2–3, 10–11 (adopting procedures now embodied in section 504).[8]

As to the availability and adequacy of district court review, petitioners' main contention appears to be that broadcast licensees wishing to challenge forfeiture orders should not be compelled to endure the burden of an "additional layer" of review, before legal issues are resolved by the court of appeals. Although this consideration conceivably might argue in favor of legislation giving licensees the option of going directly to the court of appeals when they are willing to settle for review on the basis of the administrative record in lieu of trial *de novo, see* note 6 *supra,* we do not think it is a sufficient ground for overriding the review mechanism written into law by Congress. If a licensee does not wish to raise any factual issues with respect to the proposed forfeiture, he may stipulate to the facts and thereby obtain an expedited decision on his legal claims by the district court.[9]

The fact that section 504(a) does not expressly provide for initiation of review by aggrieved licensees in no way renders the district court an inadequate forum. If, notwithstanding the protection furnished by section 504(c), a licensee is suffering from demonstrably adverse consequences from government delay in initiating the collection proceeding, we assume that the licensee could bring a declaratory judgment action against the United States in the district court, and that all issues of fact and law presented by the licensee would be subject to the trial *de novo* procedure set forth in section 504(a). *See, e. g., Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

*Straus Communications, Inc. v. FCC,* 174 U.S.App.D.C. 149, 530 F.2d 1001 (1976), and *Illinois Citizens Committee for Broadcasting v. FCC,* 169 U.S.App.D.C. 166, 515 F.2d 397 (1975), relied upon by petitioners to demonstrate that this court has jurisdiction over petitions for review of forfeiture orders, serve only to emphasize that the district court is the proper forum in cases, such as the ones at hand, in which the special statutory procedures are neither unavailable nor inadequate. In both of the cited cases, review under section 504 was not available, and consequently an action in the court of appeals under section 402(a) was indeed appropriate. In *Straus Communications, supra,* a broadcast licensee petitioned for review of a letter ruling by the Commission which held, on the one hand, that the licensee had violated the Personal Attack Rule but, on the other, rescinded the notice of apparent liability which had been issued on the basis of the violation; since no for-

8. We express no view on the constitutional adequacy of the procedures which, under the current statutory scheme, precede imposition of a forfeiture order by the Commission. *See Illinois Citizens Committee for Broadcasting v. FCC,* 169 U.S.App.D.C. 166, 172, 515 F.2d 397, 403 (1975); *id.* 169 U.S.App.D.C. at 183–84, 515 F.2d at 414–15 (statement of Judge Bazelon as to why he voted to grant rehearing *en banc* ).

9. Although this is not a case where the parties are endeavoring to confer jurisdiction on this court by consent, since the respondent Commission is actively asserting that this court lacks jurisdiction, it is well to remember throughout this discussion that jurisdiction founded upon the consent of the parties in not recognized in the federal system. Moreover, in considering the immediate contention about the desirability of avoiding successive consideration of purely legal issues by two different courts, it is to be remembered that in ordinary civil litigation parties must go to the District Court even if they wish only to litigate "purely legal" questions, and even if both parties agree that they would prefer to go to the appellate court in the first instance.

feiture was assessed, the section 504 procedures were inapplicable by their terms. In *Illinois Citizens Committee, supra* a citizens committee obtained review of a Commission order refusing to reconsider a notice of apparent liability issued against a licensee for broadcasting obscene material in violation of 18 U.S.C. § 1464; inasmuch as the licensee had paid the forfeiture upon receipt of the notice of liability, section 504 proceedings would never have been instituted.

Since exclusive jurisdiction lies in the district court, the petitions for review in Nos. 76–1593 and 75–2121, as well as the appeal in No. 76–1511, are dismissed.

*It is so ordered.*